**Alfred J. LINDH et al., Appellants-Petitioners,**

v.

**Robert C. O'HARA, Associate Judge of the Superior Court of the State of Delaware and the Superior Court of the State of Delaware In and For New Castle County, Appellees-Respondents,**

v.

**NEW CASTLE COUNTY, Intervenor.**

Supreme Court of Delaware.

Argued June 14, 1974.

Decided Aug. 6, 1974.

86

Alfred J. Lindh, Roger P. Sanders, and Francis Trzuskowski, Wilmington, appellants-petitioners, pro se.

Richard S. Gebelein, Deputy Atty. Gen., Wilmington, for appellees-respondents.

Joseph M. Bernstein, Wilmington, Attorney for New Castle County, for intervenor.

Before HERRMANN, Chief Justice, DUFFY, Associate Justice, and BROWN, Vice Chancellor.

HERRMANN, Chief Justice:

This appeal raises the questions of the source and nature of compensation for court-appointed attorneys representing indigent defendants in criminal cases.

### I.

A security officer was stabbed at the Smyrna Correctional Center. Five inmates (later known as the "Smyrna Five") were charged with assault with intent to murder, assault on a prison guard, and conspiracy. Upon request of the Public Defender, the Superior Court appointed counsel for four of the five defendants on the ground of conflict of interest among them. The appellants are three of the four attorneys thus appointed.

Following substantial pretrial proceedings, the defendants were tried jointly. The jury trial was commenced on January 7, 1974 and concluded on February 1, 1974, covering 16 days of actual trial time. Each of the defendants was found guilty and sentenced on each count of the indictment.

In due course, each of the four court-appointed attorneys filed with the Trial Judge a verified petition for compensation and reimbursement of expenditures. The petitions set forth the details of the services rendered, the time spent, and hourly rates based upon charges usually made by the appellants in private practice and "by attorneys of comparable skill and experience who privately represent persons accused of crime before this [Superior] Court in cases of similar gravity and difficulty". The compensation requested in each petition ranged from $12,249. to $12,859., computed at rates ranging from $50. to $60. per hour.

Upon those petitions, the Trial Judge made the following findings of fact:

"[T]his Court finds as a matter of fact that the time spent by the petitioners in connection with their representation of the defendants in this case, as reflected in the petitions and the exhibits attached thereto, was reasonable and necessary; and this Court further finds as a matter of fact that the rate of compensation requested by the petitioners in the petitions and the exhibits attached thereto, is a reasonable rate of compensation for the time spent by the petitioners in connection with their representation of the defendants in this case; and this Court further finds as a matter of fact that the expenses incurred by the petitioners, as reflected in the petitions and the exhibits attached thereto, were reasonably and necessarily incurred by the petitioners in connection with the representation of the defendants in this case; and this Court further finds as a matter of fact that if it were within the power of this Court to order payment of reasonable compensation and expenses to the petitioners, this Court would order payment to the petitioners of the compensation and expenses requested in the petition; * * *."

And the Trial Court made the following conclusions of law:

"[T]his Court finds as a matter of law that this Court's power to order payment to the petitioners of compensation and expenses pursuant to 10 Del.C. §§ 504 and 508 is limited to such funds as may have been provided to this Court for that purpose by appropriation of the General Assembly of the State of Delaware and that such funds presently available to the Court are insufficient to permit the payment to the petitioners of the compensation and expenses requested in the petitions; and this Court further finds as a matter of law that this Court's power to order payment to the petitioners of compensation and expenses pursuant to 29 Del.C. § 4605 is limited to such funds as may have been allotted to this Court for that purpose by New Castle County and no such funds having been allotted; and, as a result thereof, this Court further finds as a matter of law that this Court does not have the power to order the payment to the petitioners of the compensation and expenses requested in the petitions."

Thereupon, the Trial Court ordered that each petitioner be paid the sum of $750. as

compensation, plus reimbursement of expenditures.[1]

This appeal is from that Order on the ground of gross inadequacy of the compensation allowed.

## II.

A brief historical background on the subject is indicated:

At common law, there was no right to be represented by counsel. In England, at the time of the Separation, an accused charged with a misdemeanor could defend. through counsel, but as to felonies other than treason he could enlist the aid of counsel only upon points of law which the accused himself might suggest. Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932); Beaney, The Right to Counsel in American Courts, pp. 8–12 (1955).

In Delaware, as in most of the colonies, this policy was rejected early. A 1719 Statute mandated the appointment of counsel by the Court in capital cases. 1 Del.L. p. 66. The Declaration of Rights adopted in Delaware in 1776 provided (Sec. 14):

"That in all prosecutions for criminal offenses, every man hath a right * * * to be allowed Counsel * * *." And the Delaware Constitution of 1792 provided (Art. 1, § 7): "In all criminal prosecutions, the accused hath a right to be heard by himself and his counsel * * *." This provision has been carried forward into our present Constitution (Art. 1, § 7, Del.C.Ann.) in the same language.

Nevertheless, until recent years, Delaware limited the right to assigned counsel for indigents to capital offenses and other homicide cases; assignment of counsel was discretionary in other felony cases, although as early as 1961 it was the general practice in the Superior Court to appoint counsel for indigents charged with felony; and there was no authority or right to assignment of counsel as to any offense other than felony until 1953.[2] Such limited representation was furnished by court-assignment of members of the Bar as officers of the court, with no compensation, or compensation limited to "token" or "honorarium" amounts allowed by the Court and paid by the Counties.

---

1. The Opinion upon which this Order was entered contained the following clarifying statement:

"[T]he Court must recognize * * * that the funds available for the payment of compensation such as suggested here are most limited. The State funds provided to this Court for such services, upon examination, would appear to be insufficient to pay the usual compensation, in the routine type of case, for the balance of the current fiscal year without any consideration of compensation in this particular case. It is with regret, therefore, that the Court must direct compensation to each of you in a sum of money which can only be described as a token sum to cover your services. * * * [T]he Court is in the process of seeking additional funds to cover compensation for attorneys assigned to indigent defendants. If such funds become available, the Court would consider later application for additional compensation in this particular case."

2. 11 Del.C. § 5103 provides:

"§ 5103. Assignment of counsel

"(a) The Superior Court shall assign counsel to any person on trial for murder, manslaughter or any offense punishable by death, or the offense of being an accomplice or accessory to any such crime, if such person is unable to obtain counsel.

"(b) The Court may assign counsel to any person in any criminal prosecution as provided by the Rules of Criminal Procedure for the Superior Court." (1953)

See 1935 Code §§ 4305, 4306, 4310; 1915 Code §§ 3793, 3794, 3798; 1852 Code §§ 1925, 1926, 1929.

Superior Court Criminal Rule 44, Del.C. Ann., provides in pertinent part:

"Rule 44. *Assignment of Counsel*

"If the defendant appears in court without counsel, the court shall advise him of his right to counsel and, in every case in which the law requires or in any other case in which the court deems it appropriate, the court shall assign counsel to represent him at every stage of the proceeding unless he elects to proceed without counsel or is able to obtain counsel." (1953)

From 1963 on, by virtue of the decision of the United States Supreme Court in Gideon v. Wainwright, 372 U.S. 335, 83 S. Ct. 792, 9 L.Ed.2d 799, its progenitors and its progeny, it became the declared obligation of the people of each State, under the Federal Constitution, to furnish legal counsel as a matter of right to indigents charged with violation of the State's criminal laws, commencing at the arrest stage, including misdemeanors for which a jail sentence is to be imposed. See Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932); Betts v. Brady, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595 (1942); Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964); Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972).

■ This newly-declared constitutional mandate, for the furnishing of counsel to indigents as a matter of right, was met by the people of Delaware by the establishment of a State Public Defender system. In 1964, the General Assembly enacted the Model Defender Act (29 Del.C. Ch. 46) creating the State Office of Public Defender, at State expense, and charging it with the duty of representing without charge "each indigent person who is under arrest or charged with a crime"; and this duty was stated to include representation "at every stage of the proceedings following arrest", including the prosecution of "any appeals or other remedies before or after conviction that he considers to be in the interest of justice."

By § 4605 of the Public Defender Act it was provided:

"§ 4605. Appointment of additional counsel

"For cause, the court may, on its own motion or upon the application of the public defender or the indigent person, appoint an attorney other than the public defender to represent him at any stage of the proceedings or on appeal. The attorney shall be awarded reasonable compensation and reimbursement for expenses necessarily incurred, to be fixed by the court and paid by the county."

This provision for the appointment and compensation of "additional counsel", at County expense, was obviously included in the Public Defender Act to cover multiple-defendant cases and other situations in which conflict of interest considerations might require separate counsel to be brought into the case to supplement the services of the Public Defender.

Manifestly, the status of these appellants falls squarely within § 4605. We so hold.

■■ The reliance by the Trial Judge upon 10 Del.C. § 504[3] and § 508[4], and State funding thereunder, was misplaced. By its specificity, § 4605 pre-empts the field, Hamilton v. State, Del.Supr., 285 A. 2d 807 (1971), and the need here should have been addressed thereto. In view of the specific provision of § 4605, the general provisions of § 504 need no longer be considered to include compensation for court-appointed counsel as "necessary expenses connected with the sitting of the Superior Court."[5] The provisions of 10

3. 10 Del.C. § 504 provides in pertinent part:
"§ 504. Expenses of Court
"All necessary expenses connected with the sitting of the Superior Court in any county, shall, upon approval thereof by a judge of the Court, be paid by the State Treasurer."

4. 10 Del.C. § 508 provides:
"§ 508. Payment of expenses
"The payment of the compensation of all persons appointed or employed by the Court under the provisions of this chapter, and the

payment for supplies, equipment and other necessary expenses of the Court, including the traveling expenses of the judges and the court reporters, shall be made by the State Treasurer out of funds regularly appropriated for the operation of the Superior Court."

5. Prior to the amendment of 10 Del.C. § 504 in 1969, each County bore the entire cost of court-appointed counsel as one of the "necessary expenses connected with the sitting of the Superior Court." The progenitor of § 504,

Del.C. § 508 for "compensation of all persons appointed or employed by the [Superior] Court under the provisions of this chapter [10 Del.C. Ch. 5]" are clearly inapplicable to attorneys appointed under the provisions of 29 Del.C. Ch. 46. (Persons appointed or employed under 10 Del.C. Ch. 5 are enumerated therein: bailiffs, criers, pages, law clerks, court reporters and judges' secretaries.)

■ The conclusion that § 4605 governs is impelled also by the fact that the provisions of 10 Del.C. § 504 and § 508 are limited to the Superior Court. The constitutional requirement for the provision of counsel for indigent defendants in criminal cases applies, of course, to all courts. The general provision of 29 Del.C. § 4605 fulfills the whole requirement.

■ These conclusions are not any less valid because, for one reason or another, compensation for counsel appointed by the Superior Court has been paid, in the recent past, out of § 504 or § 508 "funds regularly appropriated for the operation of the Superior Court", rather than by the County pursuant to the clear provisions of § 4605.

The conclusion that § 4605 was the source to which the Trial Judge should have looked for reasonable compensation for the appellants withstands scrutiny from several points of view:

■■ First, the intervenor New Castle County, in its effort to avoid the obligation imposed upon it by § 4605, contends that § 4605 was repealed by the New Castle County Reorganization Act (55 Del.L. Ch. 85). The argument is that the repeal occurred by implication by virtue of Section 42 of the Reorganization Act [6] when read in conjunction with 9 Del.C. § 1133(c).[7] We find no merit in this contention. There has been no showing that awards of reasonable compensation to court-appointed counsel under § 4605 would be "inconsistent with or interfere with the effective operation" of the County under the Reorganization Act. Nor does 9 Del.C. § 1133(c), providing that no expenditures shall be made which are not in accordance with allocations or allotments in the budget, aid the County in its effort to avoid the obligations of § 4605. The budgetary mechanics required by § 1133(c) cannot be thus raised to the level of a repealer of § 4605 by implication. The County and the Courts have the obligation of reconciling and harmonizing § 4605 and § 1133(c). There must be irreconcilable conflict between two apparently inconsistent statutes before one statute may be said to repeal the other by implication. Improved Parcel of Land, Known as No. 900 W. 2nd Street, etc. v. State ex rel. State Highway Department, Del.Supr., 195 A.2d 390 (1963). Such showing has not been made here. Indeed, the channel of reconciliation may be found in 9 Del.C. § 1133(d) [8] which

being 1935 Del.C. § 4313, provided that such expenses be paid for by order of the Court upon the County Treasurer under the seal of the Court. (See Revision Note to § 504.)

6. Section 42 of the New Castle County Reorganization Act (55 Del.L. Ch. 85) provides in pertinent part:

"As far as the Constitution of this state permits, this act shall occupy the entire field of County self-government for New Castle County and all laws relating to or affecting New Castle County, its agencies, officials or employees and all County Ordinances, resolutions, orders and regulations which are in force when this act becomes fully effective are repealed to the extent that they are inconsistent with or interfere with the effective

operation of this act or of ordinances, or resolutions adopted by the county under the provisions of this act."

7. 9 Del.C. § 1133(c) provides:

"(c) The approval of such allocations and allotments, in the amounts submitted or in amended amounts approved by the County Executive, shall constitute budgetary allocations and allotments which shall be binding upon such office, department, or board, and the Department of Finance shall not approve nor issue any requisition, purchase order, voucher, or check that is not in accordance with such allocation or allotment."

8. 9 Del.C. § 1133(d) provides:

"(d) The allocations and allotments provided in this section may be altered at the di-

permits the County Executive to change the budgetary allocations and allotments if the need arises.

■ The County also argues that the General Assembly "could not delegate to the Superior Court [the] power to spend without appropriation." This contention requires a misinterpretation of § 4605. Under § 4605, the Superior Court does not spend any money; it merely sets the amount of the compensation. Presumably, the County will honor awards made by the Court under § 4605 as an indebtedness created by the Statute, and will make the necessary appropriation or allocation of appropriated funds to provide for the payment of all such indebtedness as it arises.

■ Closely related is the view of the Trial Court that its authority under § 4605 is limited to funds "allotted" to the Superior Court by the County for § 4605 purposes. We find no basis for that view; it is inconsistent with the express provision of § 4605 that the award of reasonable compensation and reimbursement for expenses is "to be fixed by the court and paid by the county". There is no limitation or condition attached thereto, such as the "funds regularly appropriated" language of 10 Del.C. § 508, or the "amounts appropriated" language of 57 Del.L. Ch. 228, Sec. 17.[9]

The effort of the County to avoid its financial responsibility under § 4605 is unsupported by either reason or history. It is easy to see the reasonableness and fairness of the financial arrangement under the Defender Act whereby the State has assumed the basic costs of the Public Defender system, but has assigned to the County involved the supplemental costs of

additional counsel necessarily appointed under § 4605. And historically, as has been noted, prior to the creation of the State Office of Public Defender and prior to the amendment of 10 Del.C. § 504 in 1969, each County bore the entire expense of counsel appointed by the Superior Court as one of the "necessary expenses connected with the sitting of the Superior Court", payable by order of the Court upon the County Treasurer. See Revision Note to § 504.

■ In view of the unconditional grant of authority in § 4605, we hold that the Court's function and duty thereunder are limited to the determination and award of reasonable compensation for, and expenses necessarily incurred by, counsel appointed under § 4605. Having made the award, the Court's function in the matter is completed; the remainder of the matter is between the attorney and the County. The indebtedness thus created under the Statute becomes a necessary expense of County government in the fulfillment of the General Assembly's apportionment to the County of its fair share of the constitutional obligation of the people of the State to provide counsel for indigent defendants in criminal cases. Compare State v. Rush, 46 N.J. 399, 217 A.2d 441 (1966).

■ Accordingly, we hold that the Trial Judge erred in concluding that he lacked the power to award to the appellants reasonable compensation and necessary expenses under 29 Del.C. § 4605.

### III.

The remaining problem is this: what constitutes "reasonable compensation" within the meaning of the term in § 4605?

---

rection of the County Executive. The County Executive shall direct appropriate revisions in allocations and allotments to keep expenditures within the revenues received or anticipated."

9. We note in passing the question of whether the judiciary has the inherent power to order

payment of compensation to court-appointed counsel for indigent defendants in the absence of Statute. See 20 Am.Jur.2d "Courts", § 79, p. 440; Leahey v. Farrell, 362 Pa. 52, 66 A.2d 577 (1949); Annot. 21 A.L.R.3d 819 (1968). We need not explore the matter in view of the manifest legislative willingness in this State to recognize the public obligation.

The Trial Judge accepted as reasonable the appellants' computation of fees based upon time expended and a rate of $50. to $60. per hour, being the rates charged by the appellants in private practice and "by attorneys of comparable skill and experience who privately represent persons accused of crime before the Superior Court in cases of similar difficulty and gravity."

An award of "reasonable compensation" under § 4605 may not be thus measured on the basis of the amount the court-appointed attorney would seek and actually charge if he were contracting with a client in private practice. Nor is compensation for court-appointed counsel to be measured any longer by "token" or "honorarium" standards.[10] "Reasonable compensation", henceforth, shall be deemed to lie somewhere in between.

■ The duty of a Delaware lawyer to defend an indigent in a criminal case is not a personal duty owed by the lawyer to the indigent; it is a public duty owed to the Court by the lawyer as an officer of the Court. The duty of the lawyer is to assist the Court in the business before it; and

that duty is an ancient incident to the privilege of practicing law[11] which survives today in full force and effect. See Powell v. State of Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932). In short, a Delaware lawyer has a duty to represent an indigent at the direction of the Court. Thus, when the Court requires a lawyer to represent an indigent for less compensation than he could get for his services elsewhere, the Court is requiring the lawyer to discharge an obligation which is part of the professional tradition he assumed upon being admitted to the Bar and becoming an officer of the Court.[12]

■ Accordingly, "reasonable compensation" under § 4605 is not to be based upon the criteria ordinarily used in determining a reasonable fee in a private transaction between counsel and a solvent client. The situation under § 4605 is one in which court-appointed counsel, as officers of the Court, perform a public service at public expense. Regard for the public coffers thus becomes an essential element in the determination of "reasonable compensation".

10. The "token" or "honorarium" basis for compensation was consistent, perhaps, with the assigned-counsel system prevailing in Delaware, before the creation of the Public Defender system in 1964, under which the Bar carried practically the whole financial burden of defending the poor in the performance of the profession's time-honored obligation to the defenseless when called upon by the Court. But now that the General Assembly has, at long last, recognized the responsibility of the public to share the financial obligation of defending the indigent, there is no longer any reason for further imposition by the Court upon its officers of the manifest unfairness of token or honorarium compensation.

11. Representation of indigents upon court order is an ancient common law tradition of the legal profession going back to fifteenth century England. In 2 Holdsworth's "A History of English Law", p. 491 (3rd Ed., 1923), it is stated that serjeants-at-law "from a very early period * * * might be required by any

of these courts [courts in which they could practice] to plead for a poor man." Holdsworth then cites examples from the Yearbooks of the fifteenth century, as well as a 1292 request by plaintiffs that the court "grant them a serjeant * * * for that they are poor folk". Holdsworth, op. cit. *supra*, at 491, n. 3.

The commitment of the lawyer to serve upon court assignment was put in unequivocal terms in the seventeenth century by Chief Justice Hale who stated that "if the Court assign [a serjeant] to be counsel, he ought to attend; and if he refuse * * * we would not hear him, nay, we would make bold to commit him." Deakins v. Scroggs, 1 Freeman 389, 89 Eng.Rep. 289 (Kings Bench, 1674).

12. The Court, on its part, has the duty to spread this professional obligation as widely as practicable throughout the Bar, so as to avoid unfair concentration of the burden upon a few.

In the light of the nature of the attorney's continuing duty to the Court and the essential element of regard for the public purse, the objective is to determine reasonable compensation, in accordance with prevailing standards, under the following criteria: (1) the "going rate" prevailing in other comparable jurisdictions for similar services of court-appointed counsel; (2) the general hourly level of compensation paid to public prosecutors and public defenders in this jurisdiction; and (3) applicable guidelines for reasonable compensation set forth in the Delaware Lawyer's Code of Professional Responsibility (DR 2–106). Studies of compensation allowed to court-appointed counsel for indigents in other jurisdictions, by statute, rule of court, or decision, indicate that nowhere is such compensation deemed or required to be "full compensation". See Hill v. Superior Court, 46 Cal.2d 169, 293 P.2d 10 (1956); State v. Horton, 34 N.J. 518, 170 A.2d 1 (1961); A.B.A. Minimum Standards for Criminal Justice "Providing Defense Services", § 2.4, pp. 30–34 (1967).

The rates of compensation for court-appointed counsel prevailing in the Federal Courts are especially significant, in our judgment, as criteria of fair and reasonable compensation established by the Congress on a national basis. By Statute, 18 U.S.C.A. § 3006A(d) (1970), such compensation is allowed in Federal Courts, generally speaking, at a rate not exceeding $30. per hour for time expended in court and $20. per hour for time "reasonably expended out of court", with maximum individual fees of $1,000. for the trial of felonies,[13] except where otherwise duly certified and approved by the designated judges "for extended or complex representation" in which "excess payment is necessary to provide fair compensation". See United States v. Thompson, D.D.C., 361 F.Supp. 879 (1973).[14]

In considering the "other-public-officer" criteria, it should be remembered that public defenders and public prosecutors have no overhead expenses. In State v. Rush, 46 N.J. 399, 217 A.2d 441 (1966), the overhead factor was considered in the suggestion that assigned counsel be awarded as reasonable compensation "60% of the fee a client of ordinary means would pay an attorney of modest financial success."

■ Applying such criteria, it becomes the Trial Court's function, in the exercise of a sound judicial discretion, to make an award of "reasonable compensation" under § 4605 on the basis of time and service necessarily [15] expended and performed in the representation of the indigent. The Court's discretion contains room for recognition of differences in the value of the services rendered, according to the complexity and intricacy of each particular case. In the exercise of that discretion, special effort should be made to avoid inequalities in the compensation of different lawyers who provide essentially the same services. And, finally, "It is most important to the vitality of the system that the public be confident that its resources are not being distributed with excessive liberality." [16] A.B.A. Minimum Standards for Criminal Justice "Providing Defense Services", § 2.4, p. 31 (1967).

\*　　\*　　\*　　\*　　\*　　\*

13. An additional maximum amount of $1,000. is specified by § 3006A(d) for representation in an appellate court.

14. A Rule of Court fashioned upon 18 U.S. C.A. § 3006A(d) appears desirable for the implementation of § 4605. An Advisory Committee of the Bar and Bench will be created to study the matter and to make recommendations.

15. See discussion of the "necessity" of the services performed as a criteria: A.B.A. Minimum Standards for Criminal Justice "Providing Defense Services", p. 32 (1967).

16. In this connection, the County Attorney should be given notice and opportunity to be heard as to any application in excess of $1,-000.

**94**

The appellants contend that compensation less than "full" compensation violates their constitutional rights in that it constitutes acquisition of private property (professional services) for public use without "just compensation" (Del.Const., Art. 1, Sec. 8; U.S.Const., 5th and 14th Amendments); takes property without due process of law and denies equal protection of the law (Del.Const., Art. 1, Secs. 7 and 9; U.S.Const., 14th Amendment); and constitutes involuntary servitude (U.S.Const., 13th Amendment).

Upon the premise, which we hereby reaffirm, that the duty to defend the poor at the call of the Court is a professional obligation incidental to the privilege of practicing law, the constitutional "rights" thus asserted by the appellants are found to be without substance. The rule of Powell v. State of Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932), as expanded by Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) and its progeny, is clearly founded upon the concept that if attorneys as officers of the Court are called upon by the Court to serve the indigent without "full" compensation, no constitutional restraint stands in the Court's way. See State v. Rush, 46 N.J. 399, 217 A.2d 441 (1966); United States v. Dillon, 9 Cir., 346 F.2d 633 (1965).

\*　　\*　　\*　　\*　　\*　　\*

We hold, therefore, that the "token" compensation allowed by the Superior Court to the appellants was not the "reasonable compensation" to which they were entitled under § 4605; that, therefore, the awards entered below constituted abuse of discretion.

Accordingly, the Order below is reversed and the cause remanded for awards to the appellants of "reasonable compensation", under § 4605, consistent herewith.