THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
MICHAEL FOSTER VINES, Defendant-Appellant.

Fourth District   No. 13585

Opinion filed December 2, 1976.

Richard J. Wilson and John L. Swartz, both of State Appellate Defender's Office, of Springfield, for appellant.

Robert J. Bier, State's Attorney, of Quincy (G. Michael Prall, of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE GREEN delivered the opinion of the court:

On May 16, 1975, after trial by jury in the Circuit Court of Adams County, defendant Michael Foster Vines was found guilty of the October 1, 1971, murder of Marsha Edwards. He was sentenced to 50 to 150 years' imprisonment to be served consecutively to two concurrent terms of imprisonment which he was then serving in Texas. Upon appeal he contends that: (a) he was deprived of a fair trial by the refusal of the court to authorize him to spend more than $250 of public funds to obtain an expert witness whom he claimed to be of key importance, and (b) the sentence is invalid because the law applicable to the case provided that the aggregate minimum term of the consecutive sentences could not exceed 28 years.

At trial defendant testified to a long standing use of narcotics prior to the date of the killing. He admitted that on that date after he had taken narcotics, he went to the apartment of the victim, found her sleeping, and killed her in her sleep. Dr. J. Bing Hart, a drug abuse psychopharmacologist, testified on behalf of defendant. In answer to a hypothetical question based upon testimony of defendant's history of narcotic use and defendant's conduct prior to and at the time of the killing, Dr. Hart stated that defendant could have possessed a drug-induced nonorganic disease that would have subconsciously compelled him to kill the victim. The trial judge ruled that the insanity defense had been raised and instructed the jury on that issue.

Section 113—3(d) of the Code of Criminal Procedure (Ill. Rev. Stat. 1973, ch. 38, par. 113—3(d)) has provided at all pertinent times:

"In capital cases, in addition to counsel, if the court determines that the defendant is indigent the court may, upon the filing with the court of a verified statement of services rendered, order the county treasurer of the county of trial to pay necessary expert

witnesses for defendant reasonable compensation stated in the order not to exceed $250 for each defendant."

In *People v. Watson* (1966), 36 Ill. 2d 228, 221 N.E.2d 645, the court ruled that an indigent defendant charged with the noncapital offense of forgery was entitled to a reasonable sum to procure the services of a handwriting expert to examine the check alleged to have been forged and to testify at trial.

In the instant case, the court authorized the expenditure of $250 for experts for defendant but denied three petitions to grant a greater sum. One petition was for funds to hire Dr. Hart. His services were paid for by the $250 authorized and the contributions of private persons. The other two petitions were for funds to secure the testimony of a Dr. McLaughlin who was alleged by the petitions to have examined defendant on March 5, 1974, and diagnosed his condition as "schizophrenic reaction, complicated by drug toxicity amphetamine type." The petitions further stated that Dr. McLaughlin's diagnosis was in conflict with that of two local psychiatrists who had recently examined defendant. The petitions stated that Dr. McLaughlin's testimony was "imperative." At the final hearing on the petitions, defendant produced copies of letters written by the two local doctors to defense counsel and the prosecutor indicating a diagnosis that defendant was without psychosis but of a sociopathic personality. Also produced was a copy of a letter written by Dr. McLaughlin on March 11, 1974, to the Justice Court of Tarrant County, Texas, stating that on March 5, 1974, he had examined defendant for about one hour in his office in Fort Worth, Texas. The doctor stated his diagnosis to be "schizophrenic reaction, complicated by drug toxicity amphetamine type." He further stated, "I feel that the patient, at this time, cannot understand the quality of his acts * * *."

Defendant relies on *Watson* and by analogy *People ex rel. Conn v. Randolph* (1966), 35 Ill. 2d 24, 219 N.E.2d 337. In *Randolph* the court ruled that counsel who were appointed to represent indigent defendants and required to participate in a difficult trial lasting many weeks were entitled to reimbursement well in excess of the sum authorized by statute. The court reasoned that the trial court's inherent power and duty to appoint counsel included the power and duty in exceptional circumstances to award appointed counsel sufficient compensation even if that compensation exceeded the amount authorized by statute. The court indicated that the trial court possessed this power and duty in order to protect the indigent's right to counsel. The *Watson* court concluded that for an indigent defendant to subpoena an expert witness to testify without first having hired him to make an examination of the subject matter of his testimony would be of little aid. Therefore, the court reasoned, the trial court has the inherent power and duty to order the

payment of public funds for the expenses of expert witnesses necessary for the defense of indigent defendants in order to protect the constitutional rights of those defendants to compel the attendance of witnesses.

■■ The *Watson* court stated that the defendant there was entitled to a reasonable sum for obtaining expert testimony and then suggested to the legislature that section 113(d) authorizing expenditure of a sum not to exceed $250 in capital cases be expanded to include certain noncapital cases as well. Whether the $250 limit stated in section 113(c) is the limit of the reasonable allowance is left somewhat uncertain by the opinion. The opinion made clear, however, that the award was to be made only in cases where the trial judge deems the expert testimony "to be crucial to a proper defense" (36 Ill. 2d 228, 234, 221 N.E.2d 645, 649). The Supreme Court has subsequently indicated in *People ex rel. Douglas v. Woods* (1968), 39 Ill. 2d 381, 235 N.E.2d 601, and *People v. Glover* (1971), 49 Ill. 2d 78, 273 N.E.2d 367, that in order for a defendant to be entitled to funds for expert testimony, it must be shown that the testimony is necessary to prove a crucial issue and that the defendant will be prejudiced if the testimony is not obtained.

Here the presentation made by the defendant was insufficient to show that the testimony of Dr. McLaughlin would be probative on a crucial issue. In argument on the petitions, defense counsel conceded that no issue existed as to defendant's competency to stand trial. The insanity defense concerned defendant's condition nearly 2½ years before Dr. McLaughlin's one-hour examination of defendant. The doctor's letter made no mention of defendant's condition at the time of the killing. The diagnosis was based partly upon defendant's telling the doctor that he had killed the Texas victim, the victim here, and another victim because they had refused to pay for narcotics he sold them. Defendant's testimony at trial made no mention of the victim having purchased narcotics from him or refusing to pay for them or that he killed her for that reason. The circuit judge made clear that he would not consider defendant's request unless it was shown that the doctor's testimony was crucial to the defendant. If the doctor could have given competent evidence crucial to defendant's insanity defense, counsel for the defendant should have presented an affidavit of the doctor as to what that testimony would be.

■■ Common sense dictates that the right of indigents to funds for expert testimony is not unlimited. A thorough discussion of the question appears at Annot., 34 A.L.R.3d 1256 (1970). No case is cited there and none has come to our attention that holds that an indigent is entitled to funds to obtain an expert that has no information not possessed by other experts available to the defendant. Here defendant had the benefit of Dr. Hart's testimony and two local psychiatrists who had examined defendant

pursuant to court order were also available. At most, defendant showed tht Dr. McLaughlin might have been able to testify to an opinion different than that of some of the other experts available. Upon the basis of this record, the court did not err in refusing the additional funds requested.

■■ On January 1, 1973, after the date of the offense but before the return of the indictment, section 5—8—4(c) of the Unified Code of Corrections (Ill. Rev. Stat. 1972 Supp., ch. 38, par. 1005—8—4(c)) became effective and provided that the aggregate minimum period of consecutive sentences could not exceed twice the lowest minimum term authorized for the most serious felony involved. Prior to conviction, section 5—8—4(c) was amended to authorize a higher aggregate minimum term but defendant is entitled to the benefit of the more favorable intervening sentencing statute. (*People v. Williams* (1975), 60 Ill. 2d 1, 322 N.E.2d 819.) The minimum terms of the concurrent Texas sentences which the defendant was serving were 2 and 5 years. The possible imprisonment for the instant murder was an indeterminate term with the minimum term being not less than 14 years. (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—1(b)(1) and (c)(1).) Thus the instant offense was the most serious felony and the aggregate minimum sentences imposed could not exceed 28 years which was a lesser number of years than the 50-year minimum sentence imposed for the instant offense alone.

The prosecution contends that section 5—8—4(c) was not intended to apply to sentences imposed consecutively to "out of state sentences." In *People v. Sims* (1976), 43 Ill. App. 3d 910, 357 N.E.2d 808, however, we have recently ruled that section 5—8—4(c) is applicable even to sentences ordered served consecutively to determinate Federal sentences. We rule the provision to be applicable here. Accordingly, we hold the portion of the sentence ordering the Illinois imprisonment to be served consecutively to the Texas sentences to be improper.

■■ The conviction and the portion of the sentence ordering defendant imprisoned for 50 to 150 years is affirmed. The portion of the sentence ordering that the imprisonment be served consecutively is reversed. The case is remanded for issuance of an amended mittimus ordering that the sentence be served concurrently with the other sentences defendant is serving.

Affirmed in part, reversed in part and remanded with directions.

TRAPP, P. J., and CRAVEN, J., concur.