*In re* PETITION FOR FEES IN: THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff, *v.* DAVID "MICK" JOHNSON, Defendant; THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff, *v.* JOHN L. DORRIS, Defendant.—(R. C. LANTO, JR., *et al.*, Petitioners-Appellants, *v.* THE PEOPLE OF THE STATE OF ILLINOIS, Respondents-Appellees.)

Fourth District   No. 16500

Opinion filed February 24, 1981.

CRAVEN, J., specially concurring.

John Gadau, of Champaign, for appellants.

Thomas J. Difanis, State's Attorney, of Urbana (Trish Crowley, Assistant State's Attorney, of counsel), for the People.

Howard Braverman, of Springfield, for *amicus curiae.*

Mr. JUSTICE MILLS delivered the opinion of the court:

"A lawyer's time is his stock in trade."

— A. Lincoln

We deal here with the troublesome question of fees for appointed counsel in criminal cases.

Attorney Paul R. Wilson, Jr., and attorney Reino Lanto were appointed by the circuit court of Champaign County to represent indigent defendants who had been charged with murder. When their duties to these indigent clients had been fulfilled, the attorneys filed verified petitions for fees. In this appeal, they challenge the reasonableness of the fees awarded to them by the court below.

We note that in addition to the briefs of the parties, the Illinois State Bar Association has also filed a brief as *amicus curiae.*

Paul Wilson was admitted to the practice of law in Illinois in 1974. He served as an Air Force attorney for four years, where he devoted the majority of his time to the practice of criminal law. He is now a partner in the Rantoul firm of Turnbow, Behnke and Wilson, P. C., and also serves as the public defender of Ford County. Seventy percent of his practice involves criminal matters. Wilson's firm charges an hourly rate of $75 and his share of the firm's overhead is $21.06 an hour.

In October 1979, Wilson was appointed to represent John Dorris. Dorris remained in jail while awaiting trial. During this time, Dorris' mother died and attorney Wilson filed for and was allowed an emergency hearing in an attempt to gain permission for Dorris to attend the funeral. Thereafter, a joint trial was had which lasted three days. Dorris was found not guilty of murder, attempted murder, and voluntary manslaughter, but guilty of involuntary manslaughter and aggravated battery. Research was done on sentencing issues. Wilson estimates he spent 220 hours out of court and 35 hours in court on this cause and considers $15,000 to be the lowest reasonable fee.

Reino Lanto was admitted to practice in this State in 1968. He served as a Champaign County Assistant State's Attorney and then served as an Air Force attorney from 1968 through 1974, specializing in criminal law.

He was a military judge in the Air Force from 1972 through 1974. Lanto entered private practice in 1974 and is associated with the Rantoul firm of Waaler, Evans and Gordon. He spends 40 percent of his practice on criminal matters. He charges $55 to $60 per hour for legal services and his share of the office overhead amounts to $18 per hour.

Lanto was appointed to represent David Johnson in October 1979 and it was necessary for attorney Lanto to prepare for trial twice, the State having been granted an emergency continuance. Ultimately, the State dismissed the murder charge against Johnson. Lanto spent 155 hours out of court and 7 hours in court on this cause. He requested $9,454.50 as a reasonable fee.

The customary fee for the defense of a murder case in the Champaign County area is from $12,000 to $20,000, and the customary hourly rate charged by private practitioners is $60 per hour. In 1979, beginning associates in the area received between $12,000 and $21,999 for the first year of practice. The Champaign County public defender earns $34,050 per year and his expenses are paid by the county. At petitioners' request, the court took judicial notice of $60 per hour fees paid to special prosecutors in the county. A laborer testified that he earns $12.35 per hour, plus $1.75 per hour benefits, and receives double pay for overtime. He has no overhead expenses.

The trial court awarded Wilson $2,000 fees plus out-of-pocket expenses of $90. Lanto was awarded $1,200. We totally agree with petitioners that these awards are not reasonable.

The applicable statute—section 113—3(c) of the Criminal Code of Procedure of 1963 (Ill. Rev. Stat. 1979, ch. 38, par. 113—3(c))—was amended effective December 28, 1979. These petitions were filed after the effective date and therefore the statute as amended is applicable to these awards. *People v. Harflinger* (1977), 45 Ill. App. 3d 479, 359 N.E.2d 861.

■■ The prior version of this statute authorized a reasonable fee for appointed counsel based upon a rate of compensation of $30 for each hour in court and $20 for each hour otherwise spent representing a defendant. However, awards were not to exceed $150 in misdemeanor cases and $1,000 in felony cases. An award in excess of the maximum was allowed in cases of extraordinary circumstances when the trial court certified such payment was necessary and the chief judge of the circuit approved.

The present version of the statute authorizes payment of a reasonable fee. It contains no maximum limitation in counties with population less than two million, and the court is directed to consider all relevant circumstances. In counties with population greater than two million, however, the formula set forth in the statute prior to this amendment is

retained. (Ill. Rev. Stat., 1979 Supp., ch. 38, par. 113—3(c).) The State argues that because the maximum limitation is retained for Cook County, the fees awarded in this cause, which exceed that maximum, must be considered reasonable. We disagree. No logical reason has been presented or argued for retaining the prior scheme in Cook County alone. We must conclude, therefore, that this distinction is a result of legislative oversight and we shall proceed to determine what constitutes a "reasonable fee" within the mandate of the statutory amendment.

Historically, lawyers furnished counsel for indigent defendants gratuitously, or for token compensation. This practice was established when the volume of cases requiring the appointment of counsel was small and did not result in an unreasonable burden on members of the bar. (See *State v. Green* (Mo. 1971), 470 S.W.2d 571 (dissenting opinion).) But the situation has changed dramatically. In 1963, the United States Supreme Court held that the United States Constitution requires the *States* to furnish counsel to an indigent accused. (*Gideon v. Wainwright* (1963), 372 U.S. 335, 9 L. Ed. 2d 799, 83 S. Ct. 792.) This constitutional protection has developed so that no person may be imprisoned for an offense—whether petty, misdemeanor, or felony—unless he was represented by counsel at all stages of the proceedings or knowingly and intelligently waived that right. (*Argersinger v. Hamlin* (1972), 407 U.S. 25, 32 L. Ed. 2d 530, 92 S. Ct. 2006.) The development of public defender systems has gone far in meeting the obligations of providing counsel for indigents. But, because conflicts often exist where multiple defendants are represented by one counsel (*Holloway v. Arkansas* (1978), 435 U.S. 475, 55 L. Ed. 2d 426, 98 S. Ct. 1173), the appointment of private practitioners to represent indigent defendants continues. The duty of fulfilling the State's obligation to the accused indigent has continued to be placed upon members of the bar.

The justification for requiring lawyers to accept appointments to represent indigent defendants for little or no compensation has been that an attorney is an officer of the court and a license to practice carries with it the obligation to serve the court whenever called to do so. (*Vise v. Hamilton County* (1857), 19 Ill. 78; *People ex rel. Conn v. Randolph* (1966), 35 Ill. 2d 24, 219 N.E.2d 337.) As a result, individual lawyers have been forced to bear the expense of fulfilling an obligation that belongs to the State. We also observe that although the services of medical doctors and psychiatrists are often required in court proceedings concerning indigents, these licensed professionals are not expected to donate their services. Such professionals are compensated in full for services provided to the courts. Furthermore, the burden of providing legal representation to indigent defendants has not been placed on the profession as a whole. Court appointments fall to those few attorneys in private practice with expertise in criminal law.

■■ In *People v. Sanders* (1974), 58 Ill. 2d 196, 317 N.E.2d 552, the court

recognized that there is no satisfactory method of determining adequate compensation for appointed counsel without imposing substantial burdens upon the State or local unit responsible for payment. But the growing tendency is to allow more than nominal fees to appointed counsel (*People v. Atkinson* (1977), 50 Ill. App. 3d 860, 366 N.E.2d 94), and the clear trend is for both courts and legislatures to alleviate the financial burden previously placed upon individual lawyers by providing adequate compensation for services rendered to indigent defendants. (See *Lindh v. O'Hara* (Del. 1974), 325 A.2d 84; *State v. Lehirondelle* (1976), 15 Wash. App. 502, 550 P.2d 33; *Smith v. State* (N.H. 1978), 394 A.2d 834; *State v. Rush* (1966), 46 N.J. 399, 217 A.2d 441; *In re Belding* (1974), 192 Neb. 555, 222 N.W.2d 835; *State v. DeKeyser* (1965), 29 Wisc. 2d 132, 138 N.W.2d 129; *United States v. Quintero-Medina* (N.D. Ill. 1980), 489 F. Supp. 82; Annot., 3 A.L.R. 4th 576 (1981).) By enacting the amendment in question, our legislature has relieved individual members of the bar of the financial burden involved in affording constitutional protections to indigents and has placed it more properly with the State.

Practical considerations lend support to the legislative determination that appointed counsel must be adequately compensated. A 1975 economic survey conducted by the Illinois State Bar Association indicates that an attorney's gross income is reduced by an average of 35% for overhead expenses. (See Economics of Legal Services in Illinois—a 1975 Special Bar Survey, 64 Ill. B. J. 73 (1975).) And costs have increased substantially since 1975. It takes no advanced degree in calculus to recognize that an attorney must be able to meet expenses if his practice is to survive.

■■ The standard for the assessment of fees for appointed counsel under the amended statute is one of reasonableness. The court is directed to consider all relevant circumstances, including—but not limited to—the time spent while court is in session, other time spent representing the defendant, and expenses reasonably incurred by counsel. (Ill. Rev. Stat., 1979 Supp., ch. 38, par. 113—3(c).) A reasonable fee infers at least some compensation. As such, fees awarded appointed counsel must reimburse the attorney for office overhead and expenses and yield something toward his own support. (See *State v. Rush* (1966), 46 N.J. 399, 217 A.2d 441.) A fee awarded by the court should neither unjustly enrich nor unduly impoverish appointed counsel and should allow the financial survival of his private practice. (See *Smith v. State* (N.H. 1978), 394 A.2d 834.) However, we do not interpret the statute to require compensation *equal* to the prevailing market rate in the community, as petitioners suggest, although such a fee is not prohibited and may well constitute an appropriate amount in a given case. But what constitutes a reasonable fee must ultimately be determined by the trial judge with reference to that particular case in the exercise of sound discretion.

■■ The fees awarded in the case at hand do not meet the standard of

reasonableness. Both petitioners were awarded less than $8 per hour for the time expended representing the defendants. This amount does not even reimburse counsel for their overhead expenses. We hold that these awards constitute a clear abuse of discretion. As such, it is unnecessary to address the constitutional arguments touched upon by petitioners.

We reverse and remand for reassessment of a reasonable fee consistent with the views expressed in this opinion.

Reversed and remanded.

WEBBER, J., concurs.

Mr. JUSTICE CRAVEN, specially concurring:

I concur in the result reached and in the reasoning. I write separately only to observe that the funding of litigation places an unfair burden on counties. This burden is placed there not because of any carefully thought out and orderly means of financing our court system and litigation involving indigents. Rather the present burden placed upon counties is a product of a system which, like Topsy, "just grew."

From time to time we are compelled to enter orders against counties, sometimes small counties with limited resources, for transcripts or attorney fees or for the payment of other incidents regarding litigation when there is no realistic nexus between the county and the reason for the charge or fee.

Thus, this specially concurring opinion is to note the problem and to express the view that the 19th century burdens imposed on counties should be reexamined in the light of present-day reality. That need, however, does not detract from the fact that lawyers are entitled to be paid for services rendered pursuant to court order. Such payment should be reasonable under the circumstances. It is patent that awarding of a fee of $8 an hour in the face of overhead costs over twice that amount is unreasonable. The result of such an order is to require counsel to subsidize litigation both with his time and his money in the form of office expense. I agree that this is not permissible.