30

THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff and Respondent-Appellant, *v.* MARGARET ANN KINION, Defendant.—(BRAUD, WARNER, NEPPL & WESTENSEE, LTD., Petitioner-Appellee.)

Third District    No. 81-258

Opinion filed February 26, 1982.

James T. Teros, State's Attorney, of Rock Island (John X. Breslin and Gerry R. Arnold, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Dennis A. De Porter and Walter D. Braud, both of Braud, Warner, Neppl & Westensee, Ltd., of Rock Island, for appellee, *pro se*.

JUSTICE STOUDER delivered the opinion of the court:

On November 27, 1979, defendant Margaret Ann Kinion, an accountant for the City of Rock Island, was indicted for 63 counts of felony theft. For an initially proposed fee of $20,000, petitioner Braud, Warner, Neppl, and Westensee, Ltd., a Rock Island law firm, agreed to represent her in the criminal action. As defendant lacked sufficient funds, she gave petitioner a second mortgage on her home and subsequently deeded the law firm any interest she might possess in the realty.

Raising the issues of fitness to stand trial and insanity, petitioner concluded that psychiatric examination was necessary. On May 30, 1980, defendant filed a petition for payment of psychiatric expenses, alleging that she was a poor person without employment, income, or funds; and that the Rock Island Bank had begun foreclosure proceedings against her home. This was followed, on June 12, 1980, by a motion to declare the accused indigent. The motion alleged that defendant had been suspended from her position; her car, repossessed; her furniture, being replevied; her attempts to sell her home, futile; and her ability to pay her attorney fees and costs of defense, nonexistent. On June 16, 1980, the indigency motion was heard. It was established that defendant had no funds nor investments, was receiving no unemployment compensation as she had been suspended, not terminated, and had had her bail loaned by a friend. A realtor testified that defendant's home had been listed at $78,000, had a first mortgage of over $43,000, and had a fair market value of $55,000 to $60,000. Defendant suggested that her bail be reduced and the freed monies be used to pay for her psychiatric examinations, but this was opposed by the State. The court denied the motion to reduce bail, but

adopted petitioner's further suggestion that funds from the sale be first applied to the cost of the examinations and then to petitioner's fees. Petitioner expressly stated that it was not seeking its fees from the court, and the court ordered that the county would pay for the examinations if defendant had no assets. No dollar figure was requested nor mentioned.

On September 2, 1980, defendant filed a motion for payment of witness fees, alleging her indigency and requesting the appointment of four experts to determine her fitness for trial. The following day she filed an application for indigency and payment of legal and expert witness fees, requesting the appointment of petitioner as her attorney. On September 16, 1980, defendant filed a renewed motion for declaration of indigency. The motions were heard on September 19, 1980, and the court reserved its ruling. A subsequent hearing was held on October 23, 1980. It was established that the bank had to purchase defendant's home for $47,200, the actual amount of its mortgage, as there were no bids at or above that price. The court declared defendant an indigent and appointed petitioner her attorney "for the conclusion of the proceedings." On December 2, 1980, after a four-week jury trial, defendant was found guilty. She has appealed her convictions to this court, but those appeals are presently pending in separate and unrelated appeals.

On December 22, 1980, petitioner filed a corrected petition for attorney fees and costs. The petition requested expert witness fees in the amount of $10,233.80 and attorney fees and costs in the amount of $28,606.35. On May 6, 1981, the trial court issued its opinion and ruling on petition for fees. The court concluded it had the discretion to appoint petitioner as defendant's attorney and that the effective date of the appointment was September 3, 1980. Finding that petitioner had, since that date, spent 151 hours in court and 54 hours out of court, it awarded fees of $5,390 and costs of $1,110. Concluding that the county should pay for all expert witness fees accrued from May 30, 1980, the court awarded such fees in the amount of $9,073.

On appeal, the State contends the trial court erred in appointing petitioner as defendant's attorney, and in its award of fees and costs.

Considering first the propriety of the trial court's appointment of petitioner as defendant's attorney, the State has advanced three arguments in support of its position. It contends the agreement between petitioner and defendant bars such appointment, that petitioner was estopped to seek such appointment, and that defendant was not shown to be indigent. ■■ While the parties have each advanced their arguments concerning the validity of the contract of retainer, we shall not here consider the interesting question concerning the nature and sufficiency of its consideration. We instead look to section 113—3(b) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1979, ch. 38, par. 113—3(b)):

"In all cases, except where the penalty is a fine only, if the court determines that the defendant is indigent and desires counsel, the Public Defender shall be appointed as counsel. * * * [I]f the defendant requests counsel other than the Public Defender and the court finds that the rights of the defendant will be prejudiced by the appointment of the public defender, the court shall appoint as counsel a licensed attorney at law of this State * * *."

It can be seen that the two factors which must guide the trial court in appointing counsel are indigency and the desire of a defendant for counsel. This is no more than statutory recognition of the principle that the right of an accused to counsel under the sixth amendment cannot be dependent upon ability to pay for an attorney's services. (*People v. Cook* (1980), 81 Ill. 2d 176, 407 N.E.2d 56.) Defendant here specifically requested an attorney, manifesting the requisite desire for counsel. The question of her indigency will be considered hereafter. The appropriateness of appointing private counsel is not before us as it was first raised in the State's reply brief, but we note the appointment considered the significant amount of time petitioner had expended on this matter before appointment. Were we to hold that the existence of a contractual relationship between a defendant and attorney barred a court from appointing counsel, we would undermine both the express intent of the statute and its constitutional underpinnings. This we decline to do. In so declining, we express no opinion as to any action sounding in contract. We likewise express no opinion regarding the State's contention, irrelevant to our determination of this issue and raised in its reply brief, that petitioner had an ethical obligation to continue its representation without compensation.

The State's second argument in support of its position that the trial court erred in appointing petitioner is that petitioner was estopped from accepting the appointment. The State contends that the estoppel stems from petitioner's representation in the initial indigency petition, that it would "continue to represent your defendant without cost, and that no application will be made to the State for payment of attorney's fees," and its later statement at the June 16, 1980, hearing that "[w]e are not asking that the court pay for or appoint counsel. We are accepting as part of the risks in being an attorney that occasionally our clients are unable to pay for us."

While the State does not explain the theoretical basis of its estoppel argument we note two factors. To be actionable, a false representation must generally relate to an existing or past event, not to a promise or prognostication concerning a future happening. (*Sinclair v. Sullivan Chevrolet Co.* (1964), 31 Ill. 2d 507, 202 N.E.2d 516.) In addition, an essential element of estoppel is reliance. (*Finley v. Finley* (1980), 81 Ill. 2d

317, 410 N.E.2d 12.) We cannot see how the State, the adverse party in the fee aspect of this case, relied upon petitioner's assertion. If the trial court so relied, as this appears to be the implied argument, we note no fees were awarded to petitioner for work prior to September 3, 1980. Thus, as to the relevant period, the representation did not prove to be false. Under these circumstances, we do not find petitioner was estopped from accepting the appointment.

■■ The State's third argument in support of its position on this first issue is that it was not shown that defendant was indigent. The State posits that she possessed an equity of between $11,000 and $16,000 in her home and failed to exercise her right of redemption. It appears the estimate of equity is based upon the appraisal value of the realty; however, the fact that the bank was unable to find a buyer at $47,200 belies such value. The reality of the matter is that she possessed no equity in her home. As for her failure or petitioner's failure to exercise the right of redemption, this would have required the outlay of the above sum plus interest for an asset apparently worth less. We fail to see how this could bear on the question of indigency. We therefore find the trial court correctly declared defendant to be indigent. Finding no merit in the State's three arguments, we affirm the court's order of appointment.

Considering next the trial court's award of fees and costs, we first turn to its award of attorney fees and costs, and conclude with a discussion regarding its award of expert witness fees.

An award of attorney fees to an appointed attorney who represents an indigent accused is governed by section 113—3(c) of the Code (Ill. Rev. Stat., 1980 Supp., ch. 38, par. 113—3(c)):

> "Upon the filing with the court of a verified statement of services rendered the court shall order the county treasurer of the county of trial to pay counsel other than the Public Defender a reasonable fee. In counties with a population of not more than 2,000,000, the court shall consider all relevant circumstances, including but not limited to the time spent while court is in session, other time spent in representing the defendant, and expenses reasonably incurred by counsel. * * *"

The State advances two arguments in support of its position that the $6,500 fee was excessive. It contends the statutory maximum of $1,000, applicable, in the absence of extraordinary circumstances and protracted representation, in felony cases in counties of over 2,000,000 (Ill. Rev. Stat., 1980 Supp., ch. 38, par. 113—3(c)) should here apply; and that the court erred in awarding fees from the date they were first requested.

Before December 28, 1979, this limitation would have been here applicable (see Ill. Rev. Stat. 1979, ch. 38, par. 113—3(c)), however; the language of the present statute clearly eliminates it in counties with a population of less than 2,000,000, a distinction one court has concluded "is

a result of legislative oversight." (*People v. Johnson* (1981), 93 Ill. App. 3d 848, 852, 417 N.E.2d 1062, 1064, *aff'd* (1981), 87 Ill. 2d 98.) The statutory standard to be here applied is one of reasonableness. After an examination of standards applied in other jurisdictions, our supreme court concluded:

> "[W]e believe that reasonable compensation 'should reimburse assigned counsel for his overhead and yield something toward his own support.' (*State v. Rush* (1966), 46 N.J. 399, 413, 217 A.2d 441, 448.) * * *
>
> The formula for reasonable compensation should be the hourly fee normally charged for comparable trial court services, less an amount adequate to satisfy the *pro bono* factor." *People v. Johnson* (1981), 87 Ill. 2d 98, 106.

■■ The petitioner received a per diem of $180, an appearance fee of $50, and an out-of-court hourly rate of $8.12. Due to the time of its appointment, petitioner received no compensation for 16 hearings and 190 hours spent out of court. The jury trial involved 63 criminal counts, over 100 exhibits, and 21 witnesses. Petitioner did not seek compensation for its initial work in this case, nor does it presently seek an increase in its award. Noting the lack of a cross-appeal, we affirm the trial court's award as reasonable compensation.

■■ The State also argues that the court erred in awarding attorney fees from the date they were first requested. It contends that as petitioner was not appointed until October 23, 1980, fees should not have been awarded from September 3, 1980, the date of defendant's application for indigency and payment of legal and expert fees. The court reserved its ruling as to defendant's indigency and subsequently found that she was indigent at the time of the above application. This being the case, we find no error in awarding fees from the date they were first requested.

Turning finally to the propriety of the trial court's award of expert witness fees, the State has advanced three arguments. It contends the court erred in awarding any fees as defendant was not shown to be indigent, or in the alternative, that the statutory maximum of $250 should here apply; and that the court erred in awarding fees from the date they were first requested. Having determined that defendant was indigent, we shall only consider the final two arguments.

One of the statutory provisions dealing with compensation of experts is contained in section 113—3(d) of the Code (Ill. Rev. Stat. 1979, ch. 38, par. 113—3(d)):

> "In capital cases, in addition to counsel, if the court determines that the defendant is indigent the court may, upon the filing with the court of a verified statement of services rendered, order the county treasurer of the county of trial to pay necessary expert witnesses for defendant reasonable compensation stated in the order not to exceed $250 for each defendant."

While on its face, the statute would seem to impose absolute limitations, we do not find this to be the case. Our conclusion is based on the case and statutory law of this State, as well as the unusual circumstances of the case at bar.

In *People ex rel. Conn v. Randolph* (1966), 35 Ill. 2d 24, 219 N.E.2d 337, five members of the bar of this State filed a petition for writ of *mandamus* against various State officials to compel the payment of legal fees and expenses. The fees and expenses totaled approximately $31,000, and the statute then in force (Ill. Rev. Stat. 1965, ch. 38, par. 113—3) limited reimbursement to $250 in attorney fees and, as now, $250 in expert witness fees. The respondents argued that the court's decision in *People v. Zuniga* (1964), 31 Ill. 2d 429, 202 N.E.2d 31, *cert. denied* (1965), 380 U.S. 977, 14 L. Ed. 2d 273, 85 S. Ct. 1332, where the court held that the appointed attorney could not challenge the constitutional validity of the limitation in his own right, barred an award in excess of $500. While the factual differences between *Randolph* and the case at bar are far too great for us to consider it as precedent in this case, we note the words of the court:

> "At this time it is necessary to hold only that in the extraordinary circumstances presented in this case, the court's inherent power to appoint counsel also necessarily includes the power to enter an appropriate order ensuring that counsel do not suffer an intolerable sacrifice and burden and that the indigent defendants' right to counsel is protected.
>
> If such judicial power did not exist, the courts probably could not proceed, and certainly could not conclude the trial of indigent defendants in cases such as this. To permit the petitioners to withdraw after nine weeks of trial would be a prodigious waste of resources already spent, and would provide no assurance that a dilemma similar to the one existing now would not likewise result after the appointment of new counsel. We hold that upon the record presented here the petitioners are clearly entitled to payment of their costs and fees forthwith, as ordered by the trial court. A permanent solution to the problem presented is an appropriate subject for the legislature. The problem having now been exposed we trust that the General Assembly will respond. [Citation.]" *(People ex rel. Conn v. Randolph* (1966), 35 Ill. 2d 24, 29, 219 N.E.2d 337, 340.)

Thus there is a judicial power, albeit limited (see *People v. Sanders* (1974), 58 Ill. 2d 196, 317 N.E.2d 552), to exceed the limitations of the statute.

While resting on a constitutional basis rather than on the concept of a judicial power, the limitations of the statute were again exceeded in *People v. Watson* (1966), 36 Ill. 2d 228, 221 N.E.2d 645. In *Watson*, the

court concluded that the opinion of a handwriting expert may have been crucial, and the defendant's lack of funds prevented him from presenting evidence which may have established his innocence. The court explained:

> "[I]n certain instances involving indigents, the lack of funds with which to pay for the witness will often preclude him from calling that witness and occasionally prevent him from offering a defense. Thus, although the defendant is afforded the shadow of the right to call witnesses, he is deprived of the substance.
>
> The value of an expert witness's testimony lies in his experience and, more particularly, in his preparation. Although a *subpoena* would suffice to compel his appearance at trial, this appearance by itself would be of no value unless he had been able to make findings upon which to base his testimony. It is the cost of making these preparatory findings which the defendant feels should be borne by the government.
>
>       * * *
>
> Whether it is necessary to subpoena expert witnesses in order to assure a fair trial will depend upon the facts in each case. * * *"
> (*People v. Watson* (1966), 36 Ill. 2d 228, 233-34, 221 N.E.2d 645, 648.)

The court extended the statute to certain noncapital felonies and allowed a *reasonable fee* for the purposes of hiring the expert; however, "[w]hether the $250 limit stated in section 113[(d)] is the limit of the reasonable allowance is left somewhat uncertain by the opinion." (*People v. Vines* (1976), 43 Ill. App. 3d 986, 989, 358 N.E.2d 72, 74.) A discussion of pre-*Watson* cases on the issue is found at Annot., 34 A.L.R.3d 1256, 1264 n.12 (1970). In *Vines*, the court concluded the desired expert testimony would not be probative on a crucial issue.

We also note with approval the following *dictum* from *People v. Johnson* (1981), 93 Ill. App. 3d 848, 852, 417 N.E.2d 1062, 1065, *aff'd* (1981), 87 Ill. 2d 98:

> "We also observe that although the services of medical doctors and psychiatrists are often required in court proceedings concerning indigents, these licensed professionals are not expected to donate their services. Such professionals are compensated in full for services provided to the courts."

Thus the question becomes whether that compensation be provided by the indigent, who by his very nature cannot; or by the county of trial, which already bears an onerous financial burden.

The statutory law of this State recognizes this situation. Section 104—13 of the Code mandates the appointment of one or more physicians, psychologists, or psychiatrists, chosen by the court, when fitness for trial involves mental condition (Ill. Rev. Stat., 1980 Supp., ch. 38, par. 104—13(a)), and one or more physicians and other appropriate experts

when the issue of fitness involves physical condition (Ill. Rev. Stat., 1980 Supp., ch. 38, par. 104—13(b)). The section further allows an expert chosen by an indigent defendant and who is allowed a *reasonable fee*. (Ill. Rev. Stat., 1980 Supp., ch. 38, par. 104—13(e).) Section 115—6 of the Code (Ill. Rev. Stat. 1979, ch. 38, par. 115—6), in addition to providing experts chosen by the State, allows the court to "order additional examinations if the Court finds that additional examinations by additional experts will be of substantial value in the determination of issues of insanity or drugged conditions." We also note that section 113—3(c) of the Code (Ill. Rev. Stat., 1980 Supp., ch. 38, par. 113—3(c)) orders the court, in counties of under 2,000,000 people, to "consider all relevant circumstances, including * * * expenses reasonably incurred by counsel."

■■ It can be seen that, in various circumstances, the legislature has provided the means for a trial court to appoint experts, limited neither in number nor fee. In the case at bar, the court stated that in the event defendant had no assets, the county would bear the expense of the psychiatric examinations. No contention is made that the fees are unreasonable. While but for the unusual circumstances of this case we might hold otherwise, we find sufficient support in the case and statutory law of this State to allow the court to exceed the $250 limitation. In so holding, we carve no general rule nor approve of the expenditure of unlimited funds. We believe the better practice would be to specifically petition for the greater sum before spending it, as was unsuccessfully attempted in *People v. Vines* (1976), 43 Ill. App. 3d 986, 358 N.E.2d 72. A defendant who fails to do so successfully must bear the risk that public funds will be denied.

■■ The State's final argument is that the trial court erred in awarding expert witness fees from May 30, 1980, the date they were first requested. In its opinion and ruling on petition for fees, the court expressly and correctly concluded "that there was no showing of indigency prior to September 3, 1980 * * *." This being the case, the county bears no responsibility for payment of the fees before that date. It is therefore necessary to reverse the court's assessment of expert witness fees and remand this cause for determination of fees accrued after that date.

Accordingly, the order of the circuit court of Rock Island County is reversed as to the payment of expert witness fees and remanded for further proceedings consistent with our views herein. The order is affirmed as to all other issues presented.

Affirmed in part; reversed and remanded in part.

ALLOY and HEIPLE, JJ., concur.