UNITED STATES of America

v.

Armando QUINTERO–MEDINA et al., Defendants.

No. 79 CR 508.

United States District Court,
N. D. Illinois, E. D.

April 9, 1980.

Michael W. Ford, Chapman & Cutler, Chicago, Ill., for defendant Guadalupe Luna.

Michael G. Cheronis, Chicago, Ill., for defendant Pablo Ortiz-Garcia.

Michael P. Mullen, Hubachek, Kelly, Rauch & Kirby, P. C., Chicago, Ill., for defendant Pablo Del Otero.

Martha A. Mills, Chicago, Ill., for defendant Guadalupe Guzman.

John A. Meyer, Johnson, Colmar, Kelley, Ambrose & Bailey, Chicago, Ill., for defendant Pancho Arias.

## MEMORANDUM ORDER

MARSHALL, District Judge.

There are pending in this criminal action applications by five members of the Bar for compensation in excess of $1,000 plus itemized expenses as prescribed as the maximum level of compensation without approval under the Criminal Justice Act, 18 U.S.C. § 3006A(d)(2). Subsection (d)(3) of the Act provides that payment in excess of the statutory maximum may be authorized where the district court certifies that the representation was extended or ·complex and that the amount in excess of $1,000 is necessary to provide fair compensation to the serving attorney. This certification is then submitted to the Chief Judge of the Circuit, the Honorable Thomas E. Fairchild, and if approved by Judge Fairchild, the excess compensation is paid. For the reasons hereinafter stated, I do certify that the representation provided by the named lawyers to their respective clients was extended and complex and that the amounts which I have certified to be paid to them as fees and expenses are necessary to provide fair compensation for their services.

Specifically, the lawyers, their clients and the amount requested are as follow:

Martha A. Mills, Esq. represented Guadalupe Guzman, who was found not guilty. Ms. Mills claims $3,787.50 for 126¼ hours in court; $6,345.00 for 317¼ hours out of court and $231.90 for itemized expenses, for a total of $10,364.40.

Michael P. Mullen, Esq. represented Pablo Del Otero, who was found not guilty. Mr. Mullen claims $4,012.50 for 133¾ hours in court; $2,395.00 for 119¾ hours out of court and $27.15 for itemized expenses, for a total of $6,434.65.

Michael W. Ford, Esq. represented Guadalupe Luna, who was found not guilty. Mr. Ford claims $3,892.50 for 129¾ hours in court, $2,430.00 for 121½ hours out of court, and $27.68 for itemized expenses, for a total of $6,350.18.

John A. Meyer, Esq. represented Pancho Arias, who was found not guilty. Mr. Meyer claims $3,690.00 for 123 hours in court; $2,860.00 for 143 hours out of court, and $84.90 for itemized expenses, for a total of $6,634.90.

Michael G. Cheronis, Esq. represented Pablo·Ortiz-Garcia, against whom all charges were dismissed on motion of the government after the trial had commenced. Mr. Cheronis claims $1,125.00 for 37½ hours in court; $1,350.00 for 67½ hours out of court, and $93.12 for itemized expenses, for a total of $2,568.12.

This action originated as a twenty-defendant Mexico-Chicago-Detroit-Cleveland conspiracy to import, transport and distribute heroin. The eighteen-count indictment was returned on September 10, 1979. Arraignments were conducted on September 11, 13, 14 and 17. Certain of the defendants were in custody. Accordingly, at the first arraignment the case was set for trial on November 13, 1979 well within the limits of the Speedy Trial Act.

Thirteen defendants appeared. One, Carlos Gutierrez-Dominquez, pleaded guilty and testified for the government. The others announced that they would stand trial. However, prior to trial, two pleaded guilty (although they did not testify) and the government dismissed charges against two others. The result was that eight defendants stood trial, although as previously noted one (Ortiz-Garcia) was dismissed during the trial. Of the seven who went to judgment, three were represented by privately-retained counsel; four were represented by lawyers who are the subject of this memorandum.

Three of the defendants who stood trial neither spoke nor understood spoken English. The government's chief witness, who was on the stand nine days, testified in Spanish. The result was that all of the proceedings had to be conducted bilingually with simultaneous translation of all pro-

ceedings performed by Ms. Alicia Haas, the official court interpreter, and the use of an electronic amplifying device equipped with headsets. The point is that everything had to be said twice, with the result that the trial lasted twenty-one days.

The subject matter of the prosecution extended over a period of time commencing in 1975 and concluding in 1978. The government's investigation began in 1976 or 1977 and continued down to the return of the indictment. The paper generated by the government in its investigation was voluminous. Altogether more than 1,500 pages of written materials were produced for counsel's examination pursuant to 18 U.S.C. § 3500.

Pre-trial preparations were made difficult by reason of the fact that while certain of the defendants spoke English, the witnesses who had to be interviewed and the preparations which had to be made for trial were largely conducted in Spanish, with the aid of interpreters.

Preparation was further affected by the fact that many of the individual acts charged against defendants were said to have occurred several years ago. Effective representation required pain-staking reconstruction of the defendants' whereabouts and conduct during the period in question.

The time in court reported by Ms. Mills and Messrs. Mullen, Ford and Meyer ranges from 123 hours to 133¾. These variations are explainable by reason of some individuality in pre-trial motion practice. The out of court time devoted to preparation ranges, with one exception, from 119¾ to 143 hours. These are minor differences when one considers the problems inherent in the preparation of this case for trial.

Ms. Martha Mills, representing Guadalupe Guzman, claims 317¼ hours in out of court preparation, the bulk of which (252½ hours) is devoted to legal research and brief writing. Ms. Mills pressed in behalf of her client several pre-trial motions which, while they did not dispose of the matter, had substantial merit. I have reviewed the motions and the briefs in light of her request and I find that 252½ hours is not excessive

in light of the complexity and quality of work which she performed. In all other respects her request for compensation for out of court services is comparable with the requests of her colleagues.

The in court time is, of course, indisputable. As previously noted, the case was on trial for 21 days, averaging 5½ hours of trial per day, for a total of 115½ hours. Pre-trial motions, depending upon the defendant consumed 8 to 18 hours.

Out of court preparations are remarkably reasonable. Interviews and conferences averaged approximately 25 hours. Reviewing records (consisting of the 1,500 pages of § 3500 material) averaged some 35–40 hours. Research and brief writing, with the exception of Ms. Mills, averaged about 30 hours. Altogether, with the exception of Ms. Mills, the lawyers averaged about 120 hours out of court in preparation to try this truly difficult and complex case.

The quality of their representation is reflected in the results that they obtained for their respective clients. Each of their defendants was found not guilty or the charges dismissed.

Because of the constraints of the Speedy Trial Act, each of the lawyers was required to devote her or his principal energies to this case from the time of appointment through trial. The case was a "no continuance" case and the lawyers knew it. They responded to their appointment with diligent service, reflective of the highest standards and traditions of the Bar.

In 1964 when the Criminal Justice Act was passed, lawyers were authorized payments in the amount of $15 per hour for in court time and $10 per hour for out of court time. In 1970, effective February 11, 1971, Congress increased the rates to the present $20 per hour for out of court time and $30 per hour for in court time. Since that increase, society—including lawyers—has experienced an inflation rate of 100%.

When I compare the services rendered by the lawyers in this case with the services which I see performed by lawyers in civil cases, the contrast is enlightening. Here, in

a 21-day trial, all of the lawyers in the case executed their tasks from beginning to end—from arraignment to judgment—in 3½ months, averaging a total of 250 hours per defendant at a requested rate of $20 and $30 per hour.[1] In contrast, we have had requests in civil cases for literally thousands of hours of alleged services at rates ranging from $100 to $350 per hour. Indeed, even in pro bono civil rights litigation in which fees are determined and awarded by the court to the prevailing party under 42 U.S.C. § 1988 or other provisions of the various civil rights acts, we frequently have requests for fees, which we award, at rates up to $75 per hour for several hundred hours of out of court services and a two-day trial. Of course those fees are paid by the losing party, not the government.

Lawyers who devote their substantial talents to the defense of indigent persons accused of crime are entitled to equal treatment. Unfortunately the Congress has placed and retained an unreasonably low limit on the rate at which these lawyers may be compensated from public funds. But certainly all of their time should be compensated at those low rates, when close scrutiny of that time reveals it was reasonably and necessarily spent on the defense of the assigned, indigent defendant. To do less would be to relegate those who defend persons accused of crime to a second class status and to fail in our statutorily implemented Sixth Amendment commitment to the indigent accused that they will receive professional representation of a quality comparable to that available to those who are able to retain experienced, able counsel.

Without any hesitation I certify that the claims of Ms. Mills and Messrs. Ford, Mullen, Meyer and Cheronis are justified and are necessary to provide them with fair compensation for the excellent services they have rendered in this extended and complex criminal litigation.

1. Counsel who were privately retained worked just as efficiently. And it should be noted that no lawyer was in the case in behalf of a defendant prior to indictment, with the exception of original counsel for Gutierrez-Dominquez, who pleaded guilty and testified for the government. Therefore, counsel's first encounter with the case was at post indictment appointment or retention, just sixty days prior to trial.