(No. 54804.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. DAVID "MICK" JOHNSON (R. C. Lanto, Jr., *et al.,* Appellees).

*Opinion filed November 20, 1981.*

100

Thomas J. Difanis, State's Attorney, of Urbana (Trisha Crowley, Assistant State's Attorney, of counsel), for the People.

John Gadau, of Champaign, for appellants R. C. Lanto, Jr., and Paul R. Wilson, Jr.

Howard H. Braverman, of Springfield, for *amici curiae* Illinois State Bar Association.

MR. JUSTICE MORAN delivered the opinion of the court:

Attorneys R. C. Lanto, Jr., and Paul R. Wilson, Jr., appointed to represent indigent defendants, requested compensation for their services and expenses incurred. The Champaign County circuit court awarded the attorneys nominal fees. The appellate court reversed and remanded (93 Ill. App. 3d 848), holding that the fees were unreasonable. We granted leave to appeal.

Both attorneys were appointed by the circuit court to represent defendants charged with murder. Subsequent to the disposition of the cases, the attorneys filed verified petitions for fees and expenses. Wilson requested $15,000 for attorney fees and $90 for costs. Lanto requested $9,454.50, which included attorney fees and costs. A hearing was held, at which the attorneys and other witnesses testified.

Wilson stated that, since he was admitted to the practice of law in Illinois in 1974, he has practiced primarily in the field of criminal law. The firm in which he is currently a partner charges an hourly rate of $75, and his hourly share of the firm's overhead is $21.06. Wilson's petition indicates that he spent approximately 35 hours in court and 220 hours out of court under his appointment.

Lanto has been practicing law in Illinois since 1968, and currently devotes 40% of his practice to criminal matters. His hourly charge for services is between $55 and $60 and from this $18 is allocated to office overhead. Under his appointment, Lanto spent approximately 7 hours in court and 155 hours out of court.

The uncontroverted testimony of other witnesses indicated that the customary fee for defending a murder case in Champaign County ranges from $12,000 to $20,000. The public defender for Champaign County receives an annual salary of $34,050, and is not responsible for overhead costs. The court took judicial notice that special prosecutors for the county are paid $60 per hour. A laborer testified that his

hourly wage is $12.35.

Following the hearing, the trial court awarded Wilson $2,000 for fees and $90 for out-of-pocket expenses incurred; Lanto was awarded $1,200 for fees. The fees allowed were at the rate of approximately $8 an hour, an amount less than one-half of their overhead expenses. Both attorneys appealed, contending that the awards were unreasonable.

The appellate court found that the awards were so unreasonably low as to constitute a clear abuse of discretion. While compensation equal to the prevailing market rate is not required, the court determined that fees awarded should reimburse the attorney for expenses and provide some additional compensation.

The sole issue is what constitutes "reasonable" compensation in awarding fees to private counsel appointed to represent indigent defendants in criminal cases.

Section 113—3(c) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat., 1980 Supp., ch. 38, par. 113—3(c)) (eff. Dec. 28, 1979) provides, in relevant part:

> "Upon the filing with the court of a verified statement of services rendered the court shall order the county treasurer of the county of trial to pay counsel other than the Public Defender a *reasonable* fee. In counties with a population of not more than 2,000,000, the court shall consider all relevant circumstances, including but not limited to the time spent while court is in session, other time spent in representing the defendant, and expenses reasonably incurred by counsel." (Emphasis added.)

This statute was in effect when Wilson and Lanto rendered a portion of their legal services and submitted their petitions for fees. All parties agree that section 113—3(c), as amended, is controlling. At the time the attorneys were appointed, but before they completed their services, the statute provided for a maximum rate of compensation. In misdemeanor cases, compensation was limited to $150 for each defendant; in felony cases, fees awarded could not

exceed $1,000. Additional compensation was available in extraordinary circumstances. Ill. Rev. Stat. 1975, ch. 38, par. 113—3(c).

The State contends that the awarded fees are reasonable since the trial court granted Wilson 100% and Lanto 20% more in fees than could have been permissible under the prior statute. This argument is not persuasive since the State concedes that the quoted statute is controlling. The current statute mandates that counsel be paid a reasonable fee; a fee award is not necessarily reasonable merely because it provides greater compensation than previously allowed.

The State's primary argument in support of the fees allowed focuses on an historical analysis. Traditionally, representing indigent defendants without compensation has been viewed as a professional obligation of attorneys as officers of the court. (*People v. Sanders* (1974), 58 Ill. 2d 196, 199.) Performing free services was deemed a duty incident to the privilege of practicing law. (*Vise v. County of Hamilton* (1857), 19 Ill. 78, 79.) The State further argues that the appellate court, by allowing counsel reimbursement for expenses in addition to a fee, ignored the attorneys' historical duty to represent indigent criminal defendants.

We are not unmindful of the attorneys' important obligation to defend those persons who are financially unable to retain private counsel. However, fee awards providing only nominal compensation for this service are no longer feasible. There is a growing tendency to allow counsel more than "token" compensation for representing indigent defendants. Courts in other jurisdictions have determined that the community, as well as the bar, should assume financial responsibility for the defense of indigents. (*E.g., State v. Horton* (1961), 34 N.J. 518, 532, 170 A.2d 1, 8.) We agree.

A primary reason for providing greater compensation for private attorneys is the increased frequency of court appointments. (*Abodeely v. County of Worcester* (1967),

352 Mass. 719, 227 N.E.2d 486; *State v. Lehirondelle* (1976), 15 Wash. App. 502, 550 P.2d 33.) Due to the expansion of criminal defendants' rights (*e.g., Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602; *Gideon v. Wainwright* (1963), 372 U.S. 335, 9 L. Ed. 2d 799, 83 S. Ct. 792), and the consequent conflicts with the public defenders, the burden of representation imposed on the bar has significantly increased.

Coincident with the need for increased representation, the need for more effective representation has arisen. Counsel is expected to maintain a high degree of competence and skill and faithfully guard his clients' interests. "We think the days are past when a lawyer could be expected to do this solely as a public service. If society is to demand representation by counsel in an expanding variety of proceedings and to insist on a high level of competency in the performance of such representation, then counsel should be paid." *Luke v. County of Los Angeles* (1969), 269 Cal. App. 2d 495, 499, 74 Cal. Rptr. 771, 774.

The inequitable burden of representation provides an additional argument for allowing reasonable compensation to counsel representing indigents. As a result of the recent trend by attorneys to limit their practice to certain fields of law, the "general practitioner" is quickly becoming obsolete. Thus, only a small percentage of attorneys are trial lawyers; an even smaller percentage practice in criminal defense matters. "It is unjust that this comparative handful of individuals should alone bear the burdens which are rightly those of all of the bar and indeed of the community and the taxpayers." *Abodeely v. County of Worcester* (1967), 352 Mass. 719, 723, 227 N.E.2d 486, 489.

While the present trend is to allow counsel reasonable compensation for representing indigents, courts have not allowed attorneys full compensation for performing this duty. Rather, the courts attempt to strike a balance between providing gratuitous service as a professional duty and

alleviating the increased burden of defending indigents imposed on the bar. See *State v. Horton* (1961), 34 N.J. 518, 532, 170 A.2d 1, 8; *State v. Lehirondelle* (1976), 15 Wash. App. 502, 504, 550 P.2d 33, 34.

Courts consider numerous factors in determining what constitutes "reasonable" compensation for private counsel appointed to represent indigent defendants. Some of the considerations are the extent of services performed and time involved (*United States v. James* (W.D. Tex. 1969), 301 F. Supp. 107; *Lindh v. O'Hara* (Del. 1974), 325 A.2d 84, 93), expenses incurred (see *State v. Rush* (1966), 46 N.J. 399, 416, 217 A.2d 441, 450; *State v. Miller* (Iowa 1973), 204 N.W.2d 834, 844), the rate of compensation for counsel in comparable jurisdictions (*State v. Lehirondelle* (1976), 15 Wash. App. 502, 504-05, 550 P.2d 33, 34-35), and the availability of public funds (*Lindh v. O'Hara* (1974), 325 A.2d 84, 92). At least two courts have adopted a definite rule for determining compensation. (*State v. Sidney* (1975), 66 Wis. 2d 602, 610, 225 N.W.2d 438, 442 (two-thirds of the prevailing rate charged private clients for comparable services) and State v. Rush (1966), 46 N.J. 399, 413, 217 A.2d 441, 448 (60% of the customary fee).) A few courts have not established any criteria; the matter of compensation, and the relevant factors to consider, are left to the discretion of the lower courts. See *Smith v. State* (1978), 118 N.H. 764, 394 A.2d 834; *State v. Belding* (1974), 192 Neb. 555, 222 N.W.2d 835; *Abodeely v. County of Worcester* (1967), 352 Mass. 719, 227 N.E.2d 486.

Accordingly, we believe that reasonable compensation "should reimburse assigned counsel for his overhead and yield something toward his own support." (*State v. Rush* (1966), 46 N.J. 399, 413, 217 A.2d 441, 448.) In the instant case, this was not done. A fee award which is insufficient to cover reasonable office overhead and expenses of trial is clearly unreasonable.

The formula for reasonable compensation should be the

hourly fee normally charged for comparable trial court services, less an amount adequate to satisfy the *pro bono* factor. In determining what constitutes a reasonable fee, the trial court must consider a number of factors, including, but not limited to, time spent and services rendered, the attorney's skill and experience, complexity of the case, overhead costs, and expenses of trial. Another consideration is local conditions, which refers to the number of attorneys, in a given location, who could be called upon to perform *pro bono* work. Where there are only a few criminal-trial lawyers in a particular locale, the court must necessarily appoint attorneys from the same select group to represent indigent defendants. This process imposes an unfair burden on that group of attorneys, a burden which is not being shared by all members of the bar. The trial court must also consider this inherent inequity in determining compensation.

In order to aid the trial court in its determination, attorneys should keep an itemized log of all time spent and services performed, and by whom. Specifically, the attorney must designate the amount of time spent in court and out of court, and indicate which services were performed by himself, his associates, law clerks, or paralegals. This information will establish a basis upon which to determine compensation, as well as provide a record in the event of review.

In their cross-appeal, appellees are requesting interest on any reasonable fee allowed by the trial court, dating from the time in which they were entitled to the fee until it is paid. In addition, they are requesting attorney fees incurred in the defense of this appeal.

Interest is generally allowed from the date a final judgment is entered. (Ill. Rev. Stat. 1975, ch. 74, par. 3.) However, the appellees never received a final judgment in terms of a dollar amount; the case was remanded by the appellate court to the trial court to determine a reasonable

fee. As a result, there has been no final judgment upon which to base an award of interest. Consequently, on remand, interest should not be attached to any reasonable fee allowed by the trial court.

Appellees request attorney fees on the theory that equitable principles so require since the lower court's abuse of discretion necessitated the appeal. We note that section 121—13 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1977, ch. 38, par. 121—13) allows appointed counsel, other than the public or appellate defender, reimbursement for fees incurred in appealing a defendant's felony conviction. However, this is not the situation here. Appellees request attorney fees for defending their own judgment. Generally, with certain exceptions not relevant here, attorney fees are not recoverable unless permitted by statute. (*House of Vision, Inc. v. Hiyane* (1969), 42 Ill. 2d 45, 51-52.) The fees requested in this case are not statutorily authorized, and therefore should not be allowed.

Accordingly, the judgment of the appellate court is affirmed, and the cause is remanded to the circuit court of Champaign County for a redetermination of the attorney fee awards in accordance with the views expressed herein.

*Affirmed and remanded.*