*In re* PETITION FOR FEES IN: THE PEOPLE OF THE STATE OF ILLI-NOIS, Plaintiff, *v.* DAVID "MICK" JOHNSON, Defendant; THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff, *v.* JOHN L. DORRIS, Defendant; R. C. LANTO, JR., *et al.*, Petitioners-Appellants, *v.* THE PEOPLE OF THE STATE OF ILLINOIS, Respondents-Appellees.

Fourth District   No. 4—82—0109

Opinion filed November 4, 1982.

John Gadau, of Champaign, for appellants.

Thomas J. Difanis, State's Attorney, of Urbana (Trisha Crowley, Assistant State's Attorney, of counsel), for the People.

JUSTICE WEBBER delivered the opinion of the court:
This matter is again before us on the petition of attorneys Reino Lanto and Paul Wilson, Jr., for fees  in connection with their appointment to defend "Mick" Johnson and John Dorris in the circuit court

of Champaign County.

On a prior appeal concerning the same subject matter (*People v. Johnson* (1981), 93 Ill. App. 3d 848, 417 N.E.2d 1062), this court reversed the holding of the trial court and remanded the case for reassessment of fees. The supreme court granted leave to appeal, affirmed this court in that reasonable fees were to be assessed, and remanded to the trial court for that purpose. *People v. Johnson* (1981), 87 Ill. 2d 98, 429 N.E.2d 497.

Upon remand from the supreme court, the circuit court again considered the matter without holding any further evidentiary hearing. In a lengthy memorandum opinion the circuit court dealt with a variety of factors. It accepted the number of hours stated by petitioners as having been spent in their representation of Johnson and Dorris. It then concluded that the cases were not complex; this finding appears to be based largely on the size of the files and the court's comment that the bulk of the files was comprised of discovery materials. It also noted that Johnson's case was dismissed.

The court then turned to a consideration of local conditions and found that there were a large number of competent attorneys in Champaign County ready and willing to accept criminal appointments, and held the supreme court's concern about a small group inapplicable. In connection with local conditions the court also noted that the budget prepared by the Champaign County Board reduced the appropriation for appointed counsel fees by some 40%. The court found that examination of public defenders' salaries and the fees awarded to special prosecutors was of little assistance.

The court then turned its attention to specific figures. It was of the opinion that under the supreme court's decision it could either start upward from fixed overhead costs or downward from the going rate for private counsel. The court complained that it was "left adrift without an oar." Nonetheless, it elected to start with the overhead figure. It found Lanto's overhead was $18 per hour and Wilson's was $21. It then struck a rough average of $20. It next considered hourly rates and found Lanto's to be $55 to $60, and Wilson's $75. Other evidence persuaded the court that considering the community generally, the hourly rate should be fixed at $60. Lanto, at the original hearing, testified to a total of 162 hours of which seven were in court; Wilson testified to a total of 255 hours, 35 in court.

The court then awarded Lanto the sum of $4,050 and Wilson $7,740. Simple arithmetic demonstrates that Lanto then received $25 per hour and Wilson $30 per hour. Based on their overhead figures as recited above, their fees become $7 per hour for Lanto and $9 per

hour for Wilson.

We do not believe that the trial court properly interpreted the opinion of the supreme court and overlooked the formula laid down in that opinion. We therefore vacate its award.

The parties have argued strenuously that the trial court erred in not convening a further evidentiary hearing upon remand. Specifically, the petitioners complain of the court's taking judicial notice of local conditions. We believe that the argument is beside the point. The real problem is the failure of the trial court to follow the mandate of the supreme court.

While we believe that it would have been preferable for the trial court to allow argument from the parties on the matters of which it took judicial notice, particularly the local conditions, we cannot say that this notice can be elevated to the level of reversible error. All of the matters considered in addition to what had already been presented at prior hearings were items of public knowledge and particularly within the knowledge and experience of the trial judge. (Compare *Welsh v. Welsh* (1976), 38 Ill. App. 3d 35, 347 N.E.2d 512.) The situation is unlike that in which a trial judge makes a private investigation of operative evidentiary facts as in *People v. Wallenberg* (1962), 24 Ill. 2d 350, 181 N.E.2d 143.

The supreme court's mandate to the trial court was explicit:

> "THEREFORE, it is considered by the Court that the judgment of the Circuit Court of Champaign County, BE AFFIRMED IN ALL THINGS AND STAND IN FULL FORCE AND EFFECT, notwithstanding the said matter and things therein assigned for error, and this cause be remanded to the Circuit Court of Champaign County for a redetermination of the attorney fee awards in accordance with views expressed in the opinion attached to this mandate."

Thus the duty of the trial court was to apply the formula stated in the supreme court's opinion to the facts generated in the trial court's record, together with the matters of which the trial court took judicial notice, and arrive at a redetermination. This was a pure mechanical exercise and was necessary only for the reason that no power exists in a reviewing court to order an *additur.* Supreme Court Rule 366(a)(5) (87 Ill. 2d R. 366(a)(5)) permits a *remittitur,* but we are aware of no authority permitting *additur* under the Rule, except in cases of obvious arithmetical error. In the instant case the supreme court apparently felt that local conditions were significant in its formula and these were absent in the record before it.

It is our opinion that the trial court erred in confining its redeter-

mination to a single paragraph in the supreme court's opinion. That portion of the opinion states:

> "Accordingly, we believe that reasonable compensation 'should reimburse assigned counsel for his overhead and yield something toward his own support.' (*State v. Rush* (1966), 46 N.J. 399, 413, 217 A.2d 441, 448.) In the instant case, this was not done. A fee award which is insufficient to cover reasonable office overhead and expenses of trial is clearly unreasonable." 87 Ill. 2d 98, 105, 429 N.E.2d 497.

Contrary to the trial court's finding that the supreme court's opinion permits either escalation from an overhead figure or de-escalation from an hourly rate figure, we believe that the foregoing quotation specifically rejects the overhead approach.

The key to the supreme court's opinion, its "formula," is contained in the paragraph following:

> "The formula for reasonable compensation should be the hourly fee normally charged for comparable trial court services, less an amount adequate to satisfy the *pro bono* factor. In determining what constitutes a reasonable fee, the trial court must consider a number of factors, including, but not limited to, time spent and services rendered, the attorney's skill and experience, complexity of the case, overhead costs, and expenses of trial. Another consideration is local conditions, which refers to the number of attorneys, in a given location, who could be called upon to perform *pro bono* work. Where there are only a few criminal-trial lawyers in a particular locale, the court must necessarily appoint attorneys from the same select group to represent indigent defendants. This process imposes an unfair burden on that group of attorneys, a burden which is not being shared by all members of the bar. The trial court must also consider this inherent inequity in determining compensation." 87 Ill. 2d 98, 105-06, 429 N.E.2d 497, 500.

The court dealt with two concepts: "reasonable compensation" and "a reasonable fee." The former is an abstraction, while the latter is concrete; the former is what ought to be paid, while the latter is what is paid.

At its root "compensation" carries the notion of balancing. In Webster's Second New International Dictionary 545 (1959), the primary meaning is defined as "[t]hat which constitutes, or is regarded as, an equivalent or recompense." This is elaborated in Webster's Dictionary of Synonyms 610 (lst ed. 1951):

> "*Compensate* is often preferred to *pay* when no legal obligation

is implied or no payment for services is expected, because the term stresses a return, usually but not necessarily in money, that is regarded as an equivalent for a service given, for trouble taken, time spent, or the like; as, to *compensate* a waiter for his cheerful willing service; to *compensate* a friend for the time he spent in helping one; to *compensate* a neighbor for taking care of one's pets during the summer. But in this sense *compensate* often does not imply an obligation to another or the passing of money; it often suggests a counterbalancing, as of something unpleasant by something pleasant, or of something lost by something gained; \*\*\*."

The court mandated this balancing process: take the hourly rate and balance against it a *pro bono* factor to determine a "reasonable fee," the amount in fact to be paid. Under the formula the fee will be less than the compensation. How much less is determined by the factors outlined by the court.

■ The trial court therefore was in error in its method of computation. Additionally, even if it had used the proper method, we find a clear abuse of discretion. As applied to Lanto, the *pro bono* reduction amounts to 58.4%; as applied to Wilson, it is 60%. We find these reductions excessive. In our opiinion the reductions in the instant case, based upon all the factors in the record, should not exceed 40%. We make this statement only as *dictum* since the supreme court rejected the definitive approach used in Wisconsin (33⅓% reduction) and in New Jersey (40% reduction).

■ It remains to be decided what disposition is to be made of this case. As has been indicated, this is its third appearance in the reviewing courts and judicial economy indicates that it should end here. However, as has likewise been indicated, we find ourselves powerless to order an *additur,* even though we believe that this court possesses the competency to determine fees, a competency which extends to all courts. *Welsh.*

Therefore, the judgment of the circuit court of Champaign County that fees are due is affirmed, but its redetermination of them under the supreme court's mandate in *Johnson* is vacated and the cause is again remanded to that court for another determination under the supreme court's formula as explicated in this opinion.

Vacated and remanded.

MILLS and TRAPP, JJ., concur.