2023 IL App (1st) 211662-U

No. 1-21-1662

Order filed May 19, 2023

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| DAVID GRAHAM, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee and Cross-Appellant, | ) | Cook County |
| | ) | |
| v. | ) | |
| | ) | |
| VILLAGE OF DOLTON and ROBERT COLLINS, JR., | ) | No. 17 L 9898 |
| | ) | |
| Defendants | ) | |
| | ) | |
| (Village of Dolton, Defendant-Appellant and Cross-Appellee; and Robert Collins, Jr., Defendant-Cross Appellee). | ) | Honorable |
| | ) | James E. Snyder, |
| | ) | Judge presiding. |

JUSTICE NAVARRO delivered the judgment of the court.
Presiding Justice Delort and Justice Lyle concurred in the judgment.

**ORDER**

¶ 1  *Held*: Where Public Employee Disability Act (5 ILCS 345/0.01 *et seq.* (West 2016)) benefits plaintiff received under a settlement agreement with defendant are wages under the Illinois Wage Payment and Collection Act (820 ILCS 115/1 *et seq.* (West 2016)) and the Illinois Wage Payment and Collection Act awards costs and reasonable attorney fees to a prevailing employee under the statute, we affirm the circuit court's conclusion that plaintiff was entitled to attorney fees and costs. However, where the court did not explain its drastic reduction in the attorney fees

and costs requested by plaintiff in a fees and costs petition, we reverse the court's award and remand the matter for a new hearing on that petition. We also deny defendants' motion to dismiss plaintiff's cross-appeal and strike his docketing statement, which was taken with the case.

¶ 2    Following a settlement agreement between plaintiff, David Graham, and defendant, the Village of Dolton, to resolve claims under the Illinois Wage Payment and Collection Act (IWPCA) (820 ILCS 115/1 *et seq.* (West 2016)), among other laws, Graham filed a petition for attorney fees and costs. The circuit court awarded Graham $100,000 in attorney fees and costs based upon the settlement agreement. The Village appealed, and in *Graham v. Village of Dolton*, 2021 IL App (1st) 200030-U, we reversed the circuit court and remanded the matter to determine whether Graham was entitled to attorney fees and costs pursuant to a statute. On remand, Graham filed a supplemental petition for attorney fees and costs pursuant to, in part, the IWPCA, and requested approximately $213,000 combined. The court granted his petition, but reduced his requested amount to $100,000 without providing an explanation and only awarded him attorney fees.

¶ 3    On appeal, the Village contends that the circuit court erred in determining that Graham was entitled to attorney fees under the IWPCA. And in a cross-appeal, Graham primarily contends that the court erred when it reduced his requested amount of attorney fees in his supplemental petition. Although we agree with the court that Graham was entitled to attorney fees under the IWPCA, we find that the court erred when it reduced his requested amount to $100,000 without providing a sufficient explanation and potentially did not award him any costs. For the reasons that follow, while we affirm in part, we also reverse in part and remand the matter for a new hearing on Graham's supplemental petition for attorney fees and costs. We also deny defendant Robert Collins, Jr., and the Village's motion to dismiss Graham's cross-appeal and strike his docketing statement, which was taken with the case.

¶ 4                              I. BACKGROUND

¶ 5                              A. Appeal No. 1

¶ 6     Graham worked as a police officer in the Village. Beginning in 2010, he made whistleblower complaints to the Federal Bureau of Investigation and the Cook County State's Attorney concerning suspected violations of law committed by officials and officers within the Village. In 2013, Graham suffered an injury while on duty. The year after, he suffered a severe head injury, which required him to take intermittent time off. In 2015, the Village appointed Robert Collins, Jr., as chief of police, and Graham made various whistleblower complaints to him. Two years later, Graham's doctor instructed him to refrain from working due to his head injury until he received medical clearance. Later that year, Collins informed Graham that he longer had any benefit time remaining and began deducting Graham's sick and benefit time for when Graham was off work. In response, Graham told Collins that, because his injuries occurred while on duty, he was covered under the Public Employee Disability Act (PEDA) (5 ILCS 345/0.01 *et seq.* (West 2016)). To this end, Graham demanded the return of the benefit and sick time that had been deducted. Following this demand, the Village did not pay Graham his regular salary. As a result, in September 2017, Graham sued the Village and Collins alleging violations of the Whistleblower Act (740 ILCS 174/1 *et seq.* (West 2016)), PEDA (5 ILCS 345/0.01 *et seq.* (West 2016)), and the IWPCA (820 ILCS 115/1 *et seq.* (West 2016)).

¶ 7     In July 2019, Graham and the Village reached a settlement agreement that, in part, required Graham to release the Village and Collins from any and all claims arising out of Graham's employment with the Village with limited exceptions. Additionally, the agreement required that, upon execution, Graham be placed on a paid leave of absence under PEDA for a total of 14 months. In addition, Graham and the Village consented to an agreed order of dismissal, but that:

- 3 -

"[t]he [Circuit] Court shall retain jurisdiction for purposes of allowing Graham to file a Petition seeking to recover his costs and attorney's fees. The parties shall provide an Agreed Briefing Schedule. The Parties acknowledge that Graham is the prevailing party for purposes of his petition for attorney's fees and costs."

Although the settlement agreement included Graham releasing Collins from claims, Collins was not a signatory to the agreement.

¶ 8    Thereafter, Graham filed a petition for attorney fees and costs in the circuit court asserting, in part, that he was entitled to such under the IWPCA as the prevailing party pursuant to the settlement agreement and his benefits under PEDA from the settlement agreement were wages for purposes of the IWPCA. In total, Graham sought $142,605 in attorney fees and $13,301.88 in costs, which represented expenses incurred from the initiation of the case up until, and including, Graham's petition. On December 6, 2019, the circuit court granted Graham's petition for attorney fees and costs. Initially, the court found that, pursuant to the settlement agreement, Graham was the prevailing party and entitled to attorney fees and costs. The court highlighted that the Village did not object to the hourly rate of Graham's attorney or his paralegal, and the court found that the rate charged by both was "customary." The court next asserted that it reviewed Graham's petition for "the skill and standing of [Graham's] attorney, the nature of the case, the novelty of the issues, the significance of the case, the degree of responsibility, the benefit of the client and the reasonable connection between the fees sought and the amount involved in the litigation." Following that review, the court determined that Graham was entitled to "reasonable attorney's fees and costs" in the amount of $100,000. Although the court listed various factors it relied upon in determining the award, it did not provide an explicit explanation as to why it reduced the amount of fees and costs Graham requested.

¶ 9    The Village appealed from the circuit court's judgment contending that it erred by determining the parties' settlement agreement constituted a contractual undertaking by the Village to pay for Graham's attorney fees and costs. *Graham v. Village of Dolton*, 2021 IL App (1st) 200030-U (*Graham I*). In February 2021, this court agreed with the Village and concluded that the settlement agreement did not contain an express provision providing that the Village would pay Graham's attorney fees and costs in the underlying action. *Id.* ¶¶ 18, 20. Thus, we disagreed with the circuit court that Graham was entitled to recover his attorney fees and costs from the Village pursuant to the settlement agreement. *Id.* ¶ 20. We noted the court did not address Graham's argument that he was entitled to attorney fees and costs under the IWPCA, and therefore, we reversed and remanded the matter for the court to address whether Graham was entitled to attorney fees and costs pursuant to a statute. *Id.* Given this conclusion and remedy, we found it unnecessary to address contentions made by Graham in a cross-appeal that the court erred in reducing his requested attorney fees and costs. *Id.*

¶ 10                    B. Appeal No. 2 (The Instant Appeal)

¶ 11    Upon remand to the circuit court, Graham filed a supplemental petition for attorney fees and costs pursuant to both the IWPCA and the Whistleblower Act asserting that, because he was the prevailing party in light of the settlement agreement, he was entitled to attorney fees and costs under both statutes. Graham contended that the benefits he obtained in the settlement agreement pursuant to PEDA were wages, as defined by the IWPCA, and he was entitled to attorney fees for the work performed on all counts of his complaint, not just those counts related to the IWPCA. Graham further posited that any perceived disparity between the benefit provided to him under the settlement agreement and the attorney fees did not, standing alone, justify reducing the attorney fees award. Lastly, Graham asserted that his attorney's hourly rates were reasonable. As a result,

Graham sought $198,722.75 in attorney fees, which consisted of fees for the work performed in the circuit court prior to the appeal in *Graham I* (and subject to his initial petition for attorney fees), fees incurred in connection with *Graham I* and fees for briefing the supplemental petition. Additionally, Graham sought $14,960.04 in costs, which consisted primarily of costs incurred prior to the appeal in *Graham I* (and subject to his initial petition for costs) and costs incurred in connection with *Graham I*. Graham supported his supplemental petition with various items of evidence, including invoices for legal work and costs. The Village opposed Graham's supplemental petition arguing that he was not entitled to attorney fees and costs under either statute, and even if he was, a substantial reduction in fees and costs was warranted.

¶ 12    On November 24, 2021, the circuit court found that Graham was the prevailing party based on the settlement agreement and he was "therefore entitled to fees under [the IWPCA]." The court concluded that "[t]he reasonable attorney's fees were determined by an evidentiary hearing in the proceedings prior to the appeal in the amount of $100,000.00." Consequently, the court granted Graham's petition for "attorneys' fees" in the amount of $100,000. It did not state that it awarded Graham any costs and did not explain its fee award beyond referencing the prior proceedings.

¶ 13    Thereafter, the Village timely appealed the circuit court's judgment and Graham filed a cross-appeal naming the Village and Collins as cross-appellees.

¶ 14                                II. ANALYSIS

¶ 15                            A. The Village's Appeal

¶ 16    The Village contends that the circuit court erred in determining that Graham was entitled to attorney fees and costs under the IWPCA where benefits pursuant to PEDA do not constitute wages within the meaning of the IWPCA, and the IWPCA does not award attorney fees and costs based on an employee prevailing, as such a standard does not appear in the statute.

¶ 17 We begin with the Village's argument that benefits pursuant to PEDA do not constitute wages within the meaning of the IWPCA. When we interpret a statute, our primary goal is to determine and give effect to the intent of our legislature in enacting the particular provision at issue. *Cassidy v. China Vitamins, LLC*, 2018 IL 122873, ¶ 17. "The statutory language, given its plain and ordinary meaning, is generally the most reliable indicator of that legislative intent." *Id.* When the language of a statute is clear and unambiguous, we must adhere to its plain language and meaning. *Wilkins v. Williams*, 2013 IL 114310, ¶ 22. Because whether benefits pursuant to PEDA constitute "wages" under the IWPCA is a question of statutory interpretation, we review this issue *de novo*. *State ex rel. Leibowitz v. Family Vision Care, LLC*, 2020 IL 124754, ¶ 35.

¶ 18 This issue requires us to analyze the interplay of the IWPCA and PEDA. The IWPCA applies to nearly every employee and employer in the State of Illinois with limited exceptions not relevant here. 820 ILCS 115/1 (West 2016). In part, the statute requires that an employer timely pay its employee and prohibits certain deductions from an employee's wages. 820 ILCS 115/4, 115/9 (West 2016). The purpose of the IWPCA is to provide an employee with a cause of action against his employer for the payment of wages owed to them without risk of retaliation from his employer. *Byung Moo Soh v. Target Marketing Systems, Inc.*, 353 Ill. App. 3d 126, 129 (2004); *Miller v. Kiefer Specialty Flooring, Inc.*, 317 Ill. App. 3d 370, 374 (2000). Such an action is akin to a claim for breach of contract. *McCleary v. Wells Fargo Securities, L.L.C.*, 2015 IL App (1st) 141287, ¶ 29. Under section 14(a) of the IWPCA:

"Any employee not timely paid wages, final compensation, or wage supplements by his or her employer as required by this Act shall be entitled to recover through a claim filed with the Department of Labor or in a civil action, but not both, the amount of any such underpayments and damages of 5% of the amount of any such

- 7 -

underpayments for each month following the date of payment during which such underpayments remain unpaid. In a civil action, such employee shall also recover costs and all reasonable attorney's fees." 820 ILCS 115/14(a) (West 2016).

Under the IWPCA, "wages" are "defined as any compensation owed an employee by an employer pursuant to an employment contract or agreement between the 2 parties, whether the amount is determined on a time, task, piece, or any other basis of calculation." 820 ILCS 115/2 (West 2016).

¶ 19    Meanwhile, PEDA provides that:

"Whenever an eligible employee suffers any injury in the line of duty which causes him to be unable to perform his duties, he shall continue to be paid by the employing public entity on the same basis as he was paid before the injury, with no deduction from his sick leave credits, compensatory time for overtime accumulations or vacation, or service credits in a public employee pension fund during the time he is unable to perform his duties due to the result of the injury." 5 ILCS 345/1(b) (West 2016).

PEDA was enacted to "provide for a continuation of full pay for law enforcement officers," among others, "who suffer disabling injuries in the line of duty." *Gibbs v. Madison County Sheriff's Department,* 326 Ill. App. 3d 473, 477 (2001).

¶ 20    In *Bahr v. Bartlett Fire Protection District*, 383 Ill. App. 3d 68 (2008), this court addressed a similar issue to the one at issue in this appeal. There, we determined that a firefighter, who was the plaintiff in an action against his employer, was entitled to an additional six months of benefits under PEDA for an injury he sustained while on the job. *Id.* at 75. After making this finding, this court addressed whether the plaintiff was entitled to attorney fees under the Attorneys Fees in Wage Actions Act. *Id.* at 78-79. At the time, the Attorneys Fees in Wage Actions Act provided for

- 8 -

reasonable attorney fees for an employee-plaintiff when he or she brought " 'an action for wages earned *** and establishe[d] by the decision of the court or jury that *** [those wages were] justly due and owing.' " *Id.* at 79 (quoting 705 ILCS 225/1 (West 2004)). Because "the plaintiff was entitled to an additional six months of benefits under [PEDA]," we found he was entitled to attorney fees under the Attorneys Fees in Wage Actions Act. *Id.* Thus, under *Bahr*, PEDA benefits were considered "wages earned" for purposes of the Attorneys Fees in Wage Actions Act.

¶ 21    Importantly, at the time *Bahr* was decided, the IWPCA did not provide a right to attorney fees or costs. Only beginning in 2011 did the IWPCA allow for a right to attorney fees and costs. See Pub. Act 96-1407, § 10 (eff. Jan. 1, 2011) (amending 820 ILCS 115/14). And thus, before 2011, in order to recover attorney fees or costs for lawsuits brought under the IWPCA, a plaintiff had to seek relief under the Attorneys Fees in Wage Actions Act. See *Thomas v. Weatherguard Construction Co.*, 2015 IL App (1st) 142785, ¶ 72 (observing that, "[p]rior to the 2011 amendment, attorney fees could be sought in [IWPCA] suits, under the Attorneys Fees in Wage Actions Act"). The 2011 amendment "merely changed the source of the statutory authority for a remedy that was already available to claimants." *Id.* If PEDA benefits were considered "wages earned" for purposes of the Attorneys Fees in Wage Actions Act (see *Bahr*, 383 Ill. App. 3d at 79), it logically follows that they are considered "wages" for purposes of the IWPCA, which has a broad definition of "*any* compensation owed an employee by an employer pursuant to an *** agreement between the 2 parties." (Emphasis added.) 820 ILCS 115/2 (West 2016); see also *Kerner v. State Employees' Retirement Systems*, 72 Ill. 2d 507, 513 (1978) (when a statute uses the word "any," that implies a legislative intent for a broad definition).

¶ 22    Still, the Village posits that the term "wages" in the IWPCA connotes payment for only work actually performed. However, nothing in the IWPCA supports such a construction. First, as

noted, the statute's use of the word "any" to modify "compensation" signals a broad construction of the term "compensation." See *id.* Second, in 1984, our legislature changed the definition of "wages" for purposes of the IWPCA from "compensation for labor or services rendered" to "any compensation owed an employee by an employer pursuant to an employment contract or agreement between the 2 parties." Pub. Act 83-198 (eff. Jan. 1, 1984) (amending Ill. Rev. Stat. 1983 ch. 48, ¶ 39m-2) (the predecessor statute to 820 ILCS 115/2). This evinces a legislative intent to make the definition of "wages" in the IWPCA broader than just payment for work actually performed. Moreover, in *Anderson v. Illinois Bell Telephone Co.*, 961 F. Supp. 1208, 1217 (N.D. Ill. 1997), a federal court rejected an argument that the "application of the IWPCA is contingent on an employee actually performing services" where "to be consistent with the legislative intent, the term 'wages' must be broadly construed to encompass a wide range of compensation due employees." We likewise reject the Village's argument that the term "wages" in the IWPCA connotes payment for only work actually performed.

¶ 23    Based on *Bahr*, the purpose of PEDA being enacted, which was to provide continuance of full pay to law-enforcement officers who are injured on the job (see *Gibbs*, 326 Ill. App. 3d at 477) and the broad definition of "wages" under the IWPCA given the use of "any" (see *Kerner*, 72 Ill. 2d at 513), the circuit court correctly found that the PEDA benefits Graham received through his settlement agreement with the Village were wages under the IWPCA.

¶ 24    Having concluded that Graham's PEDA benefits are wages for purposes of the IWPCA, we next must determine on what standard the IWPCA awards attorney fees and costs, which again is a question of statutory interpretation that we review *de novo. Leibowitz*, 2020 IL 124754, ¶ 35. The IWPCA provides that, where an employee is "not timely paid wages*** by his or her employer as required by this Act," he or she "shall be entitled to recover through a claim *** in a civil action.

*** In a civil action, such employee shall also recover costs and all reasonable attorney's fees." 820 ILCS 115/14(a) (West 2016). There is no explicit standard in section 14(a) for an award of attorney fees and costs other than the party being eligible be an "employee." However, multiple decisions analyzing section 14(a) have implied the standard of prevailing. See *Niiranen v. Carrier One, Inc.*, 2022 WL 103722, at *8 (N.D. Ill. Jan. 11, 2022) (acknowledging that "[p]laintiffs are entitled to recover costs and reasonable attorney's fees should they prevail on their IWPCA *** claims"); *Gunn v. Stevens Security & Training Services, Inc.*, 2020 WL 5593747, at *2 (N.D. Ill. Sept. 18, 2020) (asserting that, "[a]s prevailing parties under the *** IWPCA, [p]laintiffs are entitled to an award of their reasonable attorney fees"); *Thomas v. Weatherguard Construction Co.*, 2018 IL App (1st) 171238, ¶ 71 (observing the purpose of the attorney-fee provision in the IWPCA is to "protect[ ] exploited workers" and such workers "would not be in a position to pursue a civil action without the statute's incentive of fee recovery by the prevailing attorney").[1]

¶ 25    Nevertheless, the Village cites *Nagel v. Gerald Dennen & Co.*, 272 Ill. App. 3d 516, 525-26 (1995), where this court observed that the "[IWPCA] does not authorize an award of attorney fees to the prevailing party." *Nagel*, however, was published in 1995, and at the time, it was true that the IWPCA did not authorize an award of attorney fees to the prevailing party. And thus, in 1995, the source of an award of attorney fees for actions under the IWPCA would have been through the Attorneys Fees in Wage Actions Act. See *Thomas*, 2015 IL App (1st) 142785, ¶ 72. But, as previously discussed, Public Act 96-1407, which became effective in 2011, amended the

---

[1] Although federal district court decisions are not binding on this court, especially unreported ones, they nevertheless may provide guidance in certain instances. See *Gibbs v. Blitt & Gaines, P.C.*, 2014 IL App (1st) 123681, ¶¶ 16-17; *County of Du Page v. Lake St. Spa, Inc.*, 395 Ill. App. 3d 110, 122 (2009). This is true when there is a dearth of Illinois case law on point. See *Shaun Fauley, Sabon, Inc. v. Metropolitan Life Insurance Co.*, 2016 IL App (2d) 150236, ¶ 41.

IWPCA and provided for the recovery of attorney fees and costs in actions under the statute. See Pub. Act 96-1407, § 10 (eff. Jan. 1, 2011) (amending 820 ILCS 115/14). And thus, the Village's reliance on *Nagel* for the proposition that the IWPCA does not authorize an award of attorney fees to the prevailing party is unpersuasive.

¶ 26    The Village further highlights multiple statutes where the language therein expressly provides attorney fees and/or costs to the prevailing party. See, *e.g.*, 42 U.S.C. § 2000e-5(k) (2012) ("In any action or proceeding under" the Civil Rights Act of 1964, "the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee ***."); 775 ILCS 5/10-102(C)(2) (West 2016) (stating in an action under the Illinois Human Rights Act, "the court, in its discretion, may allow the prevailing party, other than the State of Illinois, reasonable attorneys fees and costs"). However, the Village ignores *Niiranen*, *Gunn* and *Thomas*, where courts analyzing section 14(a) of the IWPCA have implied the standard of prevailing. Moreover, despite the Village's attempt to highlight that section 14(a) does not provide for prevailing as the standard by which the recovery of attorney fees and costs should be measured, the Village fails to suggest what alternative standard would apply.

¶ 27    We agree with *Niiranen*, *Gunn* and *Thomas* that implicit in section 14(a) of the IWPCA is that, if an employee prevails in his civil action, "such employee shall also recover costs and all reasonable attorney's fees." 820 ILCS 115/14(a) (West 2016). Furthermore, because section 14(a) of the IWPCA uses the word "shall," the award of "costs and all reasonable attorney's fees" to the prevailing employee is mandatory. See *Kirk v. Arnold*, 2020 IL App (1st) 190782, ¶ 16. Given the mandatory recovery of costs and reasonable attorney fees to a prevailing employee in a civil action under the IWPCA and because the settlement agreement between Graham and the Village provided that Graham was the prevailing party for purposes of a petition for attorney fees and costs, the

- 12 -

circuit court properly found that Graham was entitled to such under the IWPCA. See *Jones v. Brandt Construction Co.*, 2022 IL App (3d) 210389-U, ¶ 37 (finding the circuit court properly awarded attorney fees and costs to multiple plaintiffs who settled with their employer after bringing a complaint alleging violations of the IWPCA).[2]

¶ 28    Because Graham was entitled to costs and reasonable attorney fees under the IWPCA, we do not need to discuss Graham's alternative argument that he is entitled to attorney fees and costs under the Whistleblower Act (740 ILCS 174/1 *et seq.*) (West 2016)), which he posits would provide us a separate basis to partially affirm the court's judgment.

¶ 29                              B. Graham's Cross-Appeal

¶ 30                          1. Motion Related to Cross-Appeal

¶ 31    Initially, we must address the Village and Collins' motion to dismiss Graham's cross-appeal and strike his docketing statement, which we took with the case. Although Collins was not part of the Village's appeal, Graham named Collins as a cross-appellee in the cross-appeal, which is why Collins is part of the Village's motion. In requesting that we dismiss Graham's cross-appeal, the Village and Collins initially assert that, based on their review of the circuit court and appellate court docket, Graham never filed a notice of cross-appeal, and thus, the cross-appeal should be dismissed. See *City of Chicago v. Human Rights Commission*, 264 Ill. App. 3d 982, 987 (1994) ("[T]he filing of a timely notice of cross-appeal is jurisdictional."). However, our review of the record shows that Graham filed his notice of cross-appeal on December 30, 2021, which, according to Illinois Supreme Court Rule 303(a)(3) (eff. July 1, 2017), was timely because he filed it within 10 days of the Village serving its notice of appeal on him. This notice is reflected in our review of

---

[2] Illinois Supreme Court Rule 23(e)(1) (eff. Feb. 1, 2023) provides that unpublished Rule 23 orders filed on, or after, January 1, 2021, "may be cited for persuasive purposes."

the circuit court docket as well as our own appellate court docket. Therefore, Graham timely filed his notice of cross-appeal.

¶ 32    In addition to timely filing a notice of cross-appeal, the cross-appellant must serve a copy of the notice upon the cross-appellee or cross-appellees. See Ill. S. Ct. R. 303(c) (eff. July 1, 2017). To this end, the Village and Collins further assert that, if Graham properly filed a notice of cross-appeal, he failed to serve that notice of them. Graham's notice of cross-appeal included a proof of service indicating that his attorney sent the notice to the Village and Collins' attorney using an approved electronic filing service provider. Despite the proof of service, assuming *arguendo* that the Village and Collins were not served a copy of Graham's notice of cross-appeal, service upon the opposing party or parties is not jurisdictional. See *Wells Fargo Bank, N.A. v. Zwolinski*, 2013 IL App (1st) 120612, ¶ 14 ("If the appellant fails to serve a copy of the notice of appeal on an opposing party, the appellate court is not deprived of jurisdiction because the filing of the notice of appeal is the only jurisdictional step in appealing from a decision of the circuit court."). The appellate court will not dismiss an appeal based on a lack of service if the opposite party or parties have not been prejudiced by the failure. *Id.* "A party is not prejudiced by the appellant's failure to serve a copy of the notice of appeal on the party if the party could file appellate briefs." *Id.* Here, the Village and Collins filed a brief as the cross-appellees, and thus, even if Graham failed to serve them with a notice of cross-appeal, they were not prejudiced in any significant manner. Therefore, we have no basis to dismiss Graham's cross-appeal.

¶ 33    The Village and Collins further request that we strike Graham's docketing statement as untimely pursuant to Illinois Supreme Court Rule 312 (eff. July 1, 2017) and, as a result, dismiss his cross-appeal for want of prosecution. Under Rule 312(a), "[a]ll appellants, including cross-appellants *** shall file a docketing statement with the clerk of the reviewing court *** within 14

days after filing the notice of appeal." Based on Graham filing his notice of cross-appeal on December 30, 2021, his docketing statement was due on, or before, January 13, 2022. Graham, however, filed a motion for leave to file his docketing statement on March 8, 2022, well after the deadline. In his motion for leave, he asserted that his delay in timely filing the docketing statement was "due to a scheduling error" on the part of his attorney. A week later, we granted Graham leave to file the docketing statement.

¶ 34 The purpose of a docketing statement is to "provide[] the appellate court with general information about a case docketed in the court." *General Motors Corp. v. Pappas*, 242 Ill. 2d 163, 178 (2011). The significance of an issue related to a docketing statement is generally measured by the resulting prejudice to the opposing party. See *Bank of Ravenswood v. Domino's Pizza, Inc.*, 269 Ill. App. 3d 714, 727 (1995); *Tekansky v. Pearson*, 263 Ill. App. 3d 759, 762 (1994). Just like the notice of cross-appeal issue, there is no significant prejudice to the Village and Collins due to Graham's untimely docketing statement given their ability to file a brief as the cross-appellees. Under the circumstances, striking Graham's docketing statement and dismissing his cross-appeal for want of prosecution is not warranted. See *Tekansky*, 263 Ill. App. 3d at 762 ("Although we do not condone the disregarding of time limits, we do not believe the [appellant] should be prejudiced under these circumstances, and since [the appellee] has not alleged any prejudice we do not dismiss the appeal because the docketing statement was 14 days late."). Therefore, we have no basis to strike Graham's docketing statement. Consequently, we deny the Village and Collins' motion to dismiss Graham's cross-appeal and strike his docketing statement.

¶ 35                    B. Merits of Graham's Cross-Appeal

- 15 -

¶ 36    We now turn to the merits of Graham's cross-appeal, where he first contends that the circuit court erred when it reduced the amount of attorney fees and costs he requested in his supplemental petition for attorney fees and costs.

¶ 37    The party seeking attorney fees and costs has the burden of providing the circuit court with sufficient evidence to establish a reasonable amount. *J.B. Esker & Sons, Inc. v. Cle-Pa's Partnership*, 325 Ill. App. 3d 276, 283 (2001). He can do that by presenting a detailed list of the "the services performed, by whom they were performed, the time expended thereon and the hourly rate charged therefor." *Kaiser v. MEPC American Properties, Inc.*, 164 Ill. App. 3d 978, 984 (1987). "In determining the reasonableness of the fee, the circuit court may look to various factors including: (1) the skill and standing of the attorney, (2) the nature of the case, (3) the novelty of the issues involved, (4) the significance of the case, (5) the degree of responsibility required, (6) the customary charges for comparable services, (7) the benefit to the client, and (8) the reasonable connection between the fees sought and the amount involved in the litigation." *J.B. Esker*, 325 Ill. App. 3d at 283. The court should also use its own experience and knowledge when determining the reasonableness of a particular fee request. *Chicago Tribune Co. v. Cook County Assessor's Office*, 2018 IL App (1st) 170455, ¶ 48. Additionally, the amount of attorney fees may be reasonable even if they are disparate to the amount of any monetary award. *J.B. Esker*, 325 Ill. App. 3d at 283. The court has broad discretion in determining the reasonableness of attorney fees. *Raintree Health Care Center v. Illinois Human Rights Commission*, 173 Ill. 2d 469, 494 (1996). An abuse of discretion occurs when the court's decision was unreasonable, arbitrary or fanciful, or where no reasonable person would adopt the same view. *Seymour v. Collins*, 2015 IL 118432, ¶ 41. Generally, when the circuit "court reduces the amount requested in a fee petition, the court's ruling should include the reasons justifying a particular reduction." *Richardson v. Haddon*, 375 Ill.

App. 3d 312, 315 (2007); see also *Casey v. Rides Unlimited Chicago, Inc.*, 2022 IL App (3d) 210404, ¶ 29 (observing that the circuit "court was required to make specific findings documenting its reasons for reducing the amount of the fee petition"); *Advocate Health & Hospitals Corp. v. Heber*, 355 Ill. App. 3d 1076, 1079 (2005) ("The court may not arbitrarily reduce [an attorney fees] award, and a reduction requires a clear and concise explanation.").

¶ 38 In the instant case, in Graham's supplemental petition, he requested $198,722.75 in attorney fees and $14,960.04 in costs. The amount of attorney fees consisted primarily of fees for work performed in the circuit court prior to the appeal in *Graham I*, which formed the basis for his initial petition's request of $142,605 in attorney fees. Additionally, his supplemental petition also requested attorney fees incurred in connection with the appeal in *Graham I* and attorney fees for briefing the supplemental petition. Graham supported this request with comprehensive invoices detailing the services performed, the day they were performed, by whom they were performed, the hourly rate for the services and a total dollar amount for the work. The amount of costs consisted primarily of charges expended prior to the appeal in *Graham I*, which formed the basis for his initial petition's request of $13,301.88 in costs, and various costs incurred on appeal in *Graham I*. Graham supported this request with receipts for the costs. Despite Graham's request for nearly $200,000 in attorney fees and nearly $15,000 in costs, both of which were supported documentarily, the circuit court only awarded Graham $100,000, which according to the court was just for "reasonable attorney's fees." And when the court awarded Graham this amount, it asserted that the amount was "determined by an evidentiary hearing in the proceedings prior to the appeal" in *Graham I*.

¶ 39 At the outset, Graham asserts that the record does not reflect that an evidentiary hearing took place prior in *Graham I*. Likewise, our review of the record does not establish that the court

- 17 -

held an evidentiary hearing on Graham's initial petition for attorney fees and costs. In an agreed order from September 2019, the court set a "[h]earing" date on Graham's initial petition for attorney fees and costs for December 6, 2019. Similarly, in one of the time entries of an invoice from Graham's attorney, there are charges related to his attorney's preparation for argument for the scheduled December 6, 2019, hearing. An evidentiary hearing is not required on a petition for attorney fees and costs. See *Raintree Health*, 173 Ill. 2d 469 at 495 (observing that "courts frequently award attorney fees *** without holding evidentiary hearings"). And in essence, the court reinstated its previous award of $100,000. However, we find multiple problems with this award.

¶ 40    First, it is unclear what part, if any, of the circuit court's award on Graham's supplemental petition constituted costs. In the court's December 6, 2019, order on Graham's initial petition for attorney fees and costs, it awarded Graham $100,000 in "attorney's fees and costs." But, in the court's November 24, 2021, order on Graham's supplemental petition for attorney fees and cost, the court found: "The reasonable attorney's fees were determined by an evidentiary hearing in the proceedings prior to the appeal in the amount of $ 100,000.00." Consequently, the court granted Graham's petition for "attorneys' fees" in the amount of $100,000. From the court's statement, it is unclear whether the court awarded Graham $100,000 in just attorney fees, or $100,000 in both attorney fees and costs. This distinction is generally important because of what the IWPCA mandates in regard to attorney fees and costs.

¶ 41    As we have discussed previously, the IWPCA provides that, when an employee prevails against his employer in a civil action, the "employee shall also recover costs and all reasonable attorney's fees." 820 ILCS 115/14(a) (West 2016). And because our legislature used the word "shall," the award of costs and reasonable attorney fees is mandatory. See *Jones*, 2022 IL App (3d)

210389-U, ¶ 22; *Kirk*, 2020 IL App (1st) 190782, ¶ 16. Furthermore, all costs and reasonable attorney fees include fees and costs not just for claims related specifically to the IWPCA, but rather for all claims involving a common set of facts or based upon related legal theories. *Thomas*, 2018 IL App (1st) 171238, ¶¶ 68-73.

¶ 42    Turning back to the uncertainty over the circuit court's award in this case, while the distinction between the awarded costs and reasonable attorney fees is generally important, it is not for the purposes of resolving Graham's first contention. This is because regardless of if the court's instant award of $100,000 was just for attorney fees, or was for a combination of attorney fees and costs, the court drastically reduced the amount of attorney fees and/or costs Graham requested in his supplemental petition without an explanation. The court did reference its prior award of attorney fees and costs, but that award likewise contained no explanation other than the court finding the hourly rate of Graham's attorney and his paralegal "customary" and generally reciting the various factors involved in determining the reasonableness of an attorney fees award. And thus, we have no way to discern why the court reduced Graham's requested attorney fees and costs of $213,682.79 in total ($198,722.75 in attorney fees and $14,960.04 in costs) to just $100,000, or 47% of the overall requested amount. Such a drastic reduction in the requested amount deserves explanation. See *Richardson*, 375 Ill. App. 3d at 315 (observing that, generally, when the circuit "court reduces the amount requested in a fee petition, the court's ruling should include the reasons justifying a particular reduction").

¶ 43    While the court has broad discretion in determining the reasonableness of an award of attorney fees (see *Raintree Health*, 173 Ill. 2d at 494), "the logical predicate to such deference is that the circuit court make and the appellate court be able to discern an informed and reasoned decision." *Turner Investors v. Pirkl*, 338 Ill. App. 3d 676, 682 (2003). For instance, in *Wendy &*

*William Spatz Charitable Found. v. 2263 N. Lincoln Corp.*, 2013 IL App (1st) 122076, ¶ 41, a lease required the tenant to pay for its landlord's attorney fees incurred in enforcing the tenant's obligations under the lease. After the landlord filed suit to enforce the tenant's obligations under the lease and obtain possession of its property, the circuit court awarded the landlord its attorney fees. *Id.* However, despite the landlord requesting attorney fees of approximately $92,000, the court awarded the landlord just $50,000. *Id.* ¶ 22. Although the court asserted that the hourly fees of the landlord's attorney were "reasonable," it did not provide a rationale for reducing the fees. *Id.* On appeal, we found the court erred by "not provid[ing] an objective basis justifying the fee reduction or explaining the rationale behind the amount by which they were reduced." *Id.* ¶ 42.

¶ 44    Similarly, in *Murillo v. City of Chicago*, 2016 IL App (1st) 143002, ¶ 13, the circuit court determined on summary judgment that the City of Chicago had illegally discriminated against the plaintiff. Thereafter, the plaintiff filed a petition for attorney fees and sought approximately $300,000 in fees. *Id.* ¶ 14. In reviewing the fee petition, the court found the hourly rate of the lead attorney to be reasonable, but reduced the hourly rate of two other attorneys. *Id.* The court also "deleted or reduced time billed that 'appeared to be excessive time for the task, duplicative, or unnecessary,' but otherwise gave no specifics." *Id.* ¶ 15. In total, the court awarded the plaintiff approximately $184,000 in attorney fees. *Id.* On appeal, this court observed that the circuit "court did not sufficiently explain its rationale as to the reductions in time" and "did not specify which entries it was deleting." *Id.* ¶¶ 31-32. We noted that "courts may not arbitrarily reduce time" and "reductions require 'a clear and concise explanation.' " *Id.* ¶ 32 (quoting *Advocate Health*, 355 Ill. App. 3d at 1078-79). This court asserted that the circuit "court did not provide this, and the parties should not need to divine [its] reasoning." *Id.*

¶ 45    Given that, when the circuit court awards attorney fees, but reduces the requested amount, they should provide clear explanations for such reductions, which did not occur in this case, we cannot discern whether the court abused its discretion in reducing Graham's requested amount of attorney fees and costs by a substantial margin. See *Turner Investors*, 338 Ill. App. 3d at 682 (observing the "logical predicate to such deference is that the circuit court make and the appellate court be able to discern an informed and reasoned decision"). When the court fails to provide the requisite explanation on an award of attorney fees and/or costs, this court has remanded the matter to the circuit court for a new hearing on the petition for attorney fees and costs, in particular for the court to provide an explanation if it chooses to reduce the requested amount of attorney fees and costs again. See *Casey*, 2022 IL App (3d) 210404, ¶¶ 29-31 (where the circuit court awarded $2500 in attorney fees despite a plaintiff's request for $10,640 without explanation, we reversed the "court's reduction of the attorney fees and remand[ed] for a new hearing on [the plaintiff's] fee petition and for the [circuit] court to provide the reasons for its decision should it again reduce the fee"); *Wendy & William Spatz*, 2013 IL App (1st) 122076, ¶ 42 (same); *Richardson*, 375 Ill. App. 3d at 315-16 (same).

¶ 46    Graham, however, requests that we simply reverse the circuit court's award of $100,000 in attorney fees and remand with instructions to award Graham $198,722.75 in attorney fees and $14,960.04 in costs, which is what he sought in his supplemental petition. For support of this remedy, Graham cites to *Board of Commissioners of Bolingbrook Park District v. Will County*, 154 Ill. App. 3d 395 (1987). However, that decision was abrogated by *Brundidge v. Glendale Federal Bank, F.S.B.*, 168 Ill. 2d 235 (1995), and thus, we do not find *Board of Commissioners* to be persuasive. Thus, remanding the matter for a new hearing is the appropriate outcome. See *Wendy & William Spatz*, 2013 IL App (1st) 122076, ¶ 42; *Richardson*, 375 Ill. App. 3d at 315.

- 21 -

¶ 47 Our conclusion should not be construed to mean that Graham is entitled to all of the attorney fees and costs he has requested, merely that, in order to determine whether the circuit court abused its discretion in the reduction of fees and costs, we must be able to discern the reasons therefor. See *Turner Investors*, 338 Ill. App. 3d at 682. Although we have concluded that we must remand the matter to the circuit court for a new hearing, we can determine that Graham is not entitled to any attorney fees and costs incurred in connection with *Graham I* as a matter of law. See *Sommese v. American Bank & Trust Co., N.A.*, 2017 IL App (1st) 160530, ¶ 19 (observing that the entitlement to attorney fees is a question of law).

¶ 48 In Graham's supplemental petition, he requested a significant amount of attorney fees and some costs incurred in connection with the appeal in *Graham I*. While the IWPCA's fees-and-costs provision does allow a prevailing employee to recover appellate-related attorney fees and costs in certain circumstances (see *Jones*, 2022 IL App (3d) 210389-U, ¶¶ 39-43), to be afforded attorney fees and costs in connection with appellate work, the party seeking them must have also prevailed on appeal. See *Trutin v. Adam*, 2016 IL App (1st) 142853, ¶ 35 (observing that, "where a party that prevails in the trial court is required to defend that victory on appeal, courts award attorney fees to that party for their work on the appeal, too, provided they prevail on appeal as they did at trial"). In determining whether a party has prevailed on appeal for purposes of an award of attorney fees and costs, we look at whether "he or she [wa]s successful on any significant issue" in the appeal. *Aliano v. Transform SR LLC*, 2020 IL App (1st) 172325, ¶ 27.

¶ 49 Graham did not prevail on any significant issue in *Graham I.* In that appeal, we disagreed with the circuit court's determination that Graham was entitled to attorney fees and costs pursuant to the settlement agreement. *Graham*, 2021 IL App (1st) 200030-U, ¶ 20. As a result, we reversed and remanded the matter to the circuit court to address the issue of whether Graham was entitled

to attorney fees and costs pursuant to a statute. *Id.* Because of our conclusion, we found it unnecessary to address Graham's cross-appeal contention that the circuit court erred in reducing his requested amount of attorney fees and costs. *Id.* It cannot be said that Graham prevailed on any significant issue in *Graham I*, meaning he is not entitled to attorney fees and costs in connection with that appeal. See *Trutin* 2016 IL App (1st) 142853, ¶ 35. The same cannot be said as a matter of law for Graham's request for attorney fees for his attorney's work in connection with the supplemental petition for attorney fees. "Typically, where a statute provides for the award of attorney fees and costs in prosecuting an action, the cost of presenting and litigating the fee petition itself is likewise recoverable." *Id.* ¶ 45. Thus, upon remand, the circuit court should determine the reasonableness of Graham's request for attorney fees incurred in connection with the supplemental petition using the relevant factors. See *Chicago Tribune*, 2018 IL App (1st) 170455, ¶ 48; *J.B. Esker*, 325 Ill. App. 3d at 283.

¶ 50    Nevertheless, the Village argues that the circuit court did not permit Graham to file a supplemental petition for attorney fees and costs seeking even more fees and costs, and in *Graham I*, we did not authorize a supplemental petition.[3] According to the Village, the only issue on remand was whether Graham had a statutory right to attorney fees and costs as a prevailing party under a statute. The Village could have, but did not, object to Graham's supplemental petition for attorney fees and costs as being improperly filed. Because the Village failed to object below, it cannot rely on this argument on appeal. See *Mabry v. Boler*, 2012 IL App (1st) 111464, ¶ 15 ("Generally, arguments not raised before the circuit court are forfeited and cannot be raised for the first time on appeal."). Moreover, the "court possesses the inherent authority to control its own docket and the course of litigation, including the authority to prevent undue delays in the disposition of cases caused by

_____

[3] Although Graham also named Collins as a cross-appellee, only the Village filed a brief as such.

abuses of the litigation process." *J.S.A. v. M.H.*, 224 Ill. 2d 182, 196 (2007). Had the court believed that Graham's supplemental petition for attorney fees and costs was unwarranted based upon the dictates of *Graham I* or because it had not granted him leave to do so, it could have struck Graham's supplemental petition *sua sponte* rather than provided the parties a briefing schedule and allowed the supplemental petition to be fully briefed. See *Rocha v. FedEx Corp.*, 2020 IL App (1st) 190041, ¶ 70 (finding the circuit court properly struck a party's pleading *sua sponte*). We therefore find no issue with Graham filing a supplemental petition for attorney fees and costs.

¶ 51    Accordingly, we reverse the circuit court's award of attorney fees and costs, and remand the matter for a new hearing on Graham's supplemental petition for attorney fees and costs. Upon remand, in addition to providing an explanation for any reduction in the amount of requested attorney fees and costs, the court should also distinguish between the award of attorney fees and the award of costs for the reasons discussed herein.

¶ 52                                    C. Attorney Fees and Costs Related to this Appeal

¶ 53    Additionally, Graham contends that he is entitled to attorney fees and costs for defending the Village's appeal. As previously discussed, "[t]ypically", in the context of statutory fee-shifting provisions, "where a party that prevails in the trial court is required to defend that victory on appeal, courts award attorney fees to that party for their work on the appeal, too, provided they prevail on appeal as they did at trial." *Trutin*, 2016 IL App (1st) 142853, ¶ 35.

¶ 54    Although there are no published decisions addressing appellate attorney fees and costs under the IWPCA, this court's decision in *Jones*, 2022 IL App (3d) 210389-U did, which again may be cited as persuasive authority. See Ill. S. Ct. R. 23(e)(1) (eff. Feb. 1, 2023). There, multiple plaintiffs filed a complaint against their former employer and its high-level personnel, in part, alleging violations under the IWPCA. *Jones*, 2022 IL App (3d) 210389-U, ¶ 4. Following a

- 24 -

settlement, the defendants agreed to pay the plaintiffs a total of $30,000 based on their claimed violations of, in part, the IWPCA. *Id.* ¶ 9. The settlement further provided that the plaintiffs would file a petition for attorney fees and costs under the IWPCA, and a hearing would be conducted on the reasonableness of those fees and costs. *Id.* In turn, the plaintiffs filed a petition for attorney fees and costs, which the circuit court granted, though it reduced the plaintiffs' requested amount. *Id.* ¶¶ 10, 19. The defendants appealed, contending that the circuit court's award of attorney fees and costs was unreasonable. *Id.* ¶ 24. After this court found that the circuit court did not abuse its discretion in its award of attorney fees and costs, we addressed a motion filed by the plaintiffs on appeal requesting their attorney fees and costs incurred in defending the appeal. *Id.* ¶¶ 19, 37, 39. This court observed that, "when the purpose of a statute is to redress a wrong and the statute allows for the plaintiff to recover attorney fees, the plaintiff should also be entitled to fees and costs incurred on appeal." *Id.* ¶ 42. We further highlighted the purpose of the IWPCA, which was to assist employees in seeking redress from employers, and concluded that "[a]llowing exploited employees to recover fees and costs incurred on appeal is consistent with this purpose." *Id.* Thus, because the plaintiffs had been successful in their IWPCA claims against the defendants and the plaintiffs had incurred fees and costs to successfully defend that judgment, this court found they were "entitled to appellate attorney fees and costs" and remanded the matter to the circuit court to allow the plaintiffs to file a petition for those fees and costs. *Id.* ¶ 43.

¶ 55    We agree with *Jones* and find that Graham is entitled to his costs and reasonable attorney fees incurred in successfully defending the Village's appeal. Graham further posits that he is entitled to additional attorney fees and costs for prosecuting his cross-appeal. Consistent with *Jones* and the IWPCA's mandate that a prevailing employee recover "costs and *all* reasonable attorney's fees" (emphasis added) (820 ILCS 115/14(a) (West 2016)), Graham is also entitled to

his costs and reasonable attorney fees incurred in successfully prosecuting his cross-appeal. See *Trutin*, 2016 IL App (1st) 142853, ¶¶ 29, 46 (where a municipal ordinance required the prevailing plaintiff in a landlord-tenant action to " 'be entitled to *all* court costs and reasonable attorneys fees,' " this broad language allowed a prevailing plaintiff and cross-appellant to recover the "court costs and reasonable attorney fees for work performed in prosecuting [her] cross-appeal") (emphasis added.) Therefore, upon remand to the circuit court, Graham may file a petition for the costs and reasonable attorney fees incurred in connection with this appeal. See *id.* ¶ 47 (finding "[t]he proper course" for determining the reasonableness of costs and attorney fees incurred in connection with an appeal was to remand "to the circuit court for its initial review").

¶ 56     Lastly, Graham posits that, if we affirm the circuit court's judgment finding him entitled to attorney fees and costs, we should also enter an award of postjudgment interest or remand to the circuit court for a determination and award of postjudgment interest.

¶ 57     Under section 2-1303(a) of the Code of Civil Procedure (735 ILCS 5/2-1303(a) (West 2016)), "judgments recovered in any court shall draw interest at the rate of *** 6% per annum when the judgment debtor is a unit of local government." An award of interest under section 2-1303(a) is mandatory (*Inman v. Howe Freightways, Inc.*, 2022 IL App (1st) 210274, ¶ 77), and "a judgment for costs is as much the judgment of the court as the damages awarded and that interest may therefore be awarded upon the judgment for costs." *Robinson v. Robinson*, 140 Ill. App. 3d 610, 611 (1986). But this case presents a wrinkle because we must reverse the circuit court's award of attorney fees and costs, and remand the matter for a new hearing on Graham's supplemental petition for attorney fees and costs.

¶ 58     Similar circumstances occurred in *People v. Johnson*, 87 Ill. 2d 98, 101 (1981), where two attorneys who had represented indigent defendants in criminal cases sought compensation for their

services. Following a hearing, the circuit court awarded the attorneys approximately 13% of their requested fees. *Id.* at 102. Both attorneys appealed, and the appellate court found the circuit court's award of attorney fees to be "unreasonably low" and an abuse of discretion, which warranted the reversal of the fees awards and a remand for the circuit court to determine reasonable fees. *Id.* at 101-02. The State appealed to the supreme court, which agreed with the appellate court that the circuit court's award was unreasonable. *Id.* at 105. The supreme court also addressed the attorneys' request for interest on their awards of attorney fees pursuant to the predecessor statute to section 2-1303 of the Code of Civil Procedure. *Id.* at 106. Our supreme court observed that, while interest generally begins to accrue from the date of a final judgment, the attorneys had "never received a final judgment in terms of a dollar amount" because "the case was remanded by the appellate court to the [circuit] court to determine a reasonable fee," a result it was affirming. *Id.* at 106-107. Therefore, according to the supreme court, there had not been a "final judgment upon which to base an award of interest." *Id.* at 107.

¶ 59    Consistent with *Johnson*, this court has concluded that, "[i]n cases where the exact amount owed is not calculated until the disposition of the case following remandment, interest on the judgment runs from the date of the new decree." *In re Marriage of Waltrip*, 216 Ill. App. 3d 776, 786 (1991). Consequently, Graham is not entitled to postjudgment interest at this time.

¶ 60                                    III. CONCLUSION

¶ 61    For the foregoing reasons, we affirm in part, reverse in part and remand for further proceedings consistent with this order. Additionally, we deny the Village and Collins' motion taken with the case.

¶ 62    Affirmed in part and reversed in part; cause remanded; motion denied.